IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.  2:06-CV-96-FtM-33SPC

BRADFORD T. KING,
On behalf of himself and all others
similarly situated,

     Plaintiff,

v.                                                                    **COLLECTIVE ACTION**

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation,
and PATRICK S. FLOOD,

     Defendants.
_____/

### PLAINTIFF, BRADFORD T. KING'S, MOTION TO RESTRAIN, OR IN THE ALTERNATIVE LIMIT, DEFENDANTS' EX-PARTE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS THROUGHOUT TRIAL AND TO ISSUE CORRECTIVE NOTICE

Plaintiff, BRADFORD T. KING, by and through his undersigned counsel, files this Motion to Restrain, or in the Alternative Limit, Defendants' Ex-Parte Communications with Putative Class Members Throughout Trial and to Issue Corrective Notice and states as follows:

### SUMMARY

HomeBanc is taking systematic action to intimidate and coerce putative class members ("members") in an attempt to prevent member participation in the collective action[1]. Plaintiffs have been fired, removed from lucrative accounts and warnings concerning the ramifications of participating in the action have been made. This conduct is violative of the law and needs to be restrained, sanctions issued and explanatory notices and corrective notices sent to the Members.

_____

[1]     Plaintiff's Motion for Collective Action Certification Pursuant to 29 U.S.C. §216(b) and Court Supervised Notification of Putative Plaintiffs and Memorandum In Support Thereof ("Motion for Collective Action") has been filed, however, certification has not yet been decided.

## Summary of the Objectionable Conduct

Homebanc has warned Members of the potential cost to them.  Members are advised that if they talk about pending lawsuits it is grounds for "immediate termination."  They have been told that participants in the lawsuit are being "performance managed out" of the company, hence their livelihood is at jeopardy.  Members have witnessed Plaintiffs being fired, targeted and retaliated against; confirming HomeBanc's threats that participating in the lawsuit will result in adverse employment action.  In short, the clear message HomeBanc is sending is that if a member participates in the lawsuit they will pay.  On the heels of these threats, HomeBanc held a mandatory meeting to discuss the instant lawsuit and solicited affidavits from members confirming their intention not to opt-into the lawsuit.

It is clear that the point of HomeBanc's actions was to solicit as many exclusions as possible before this Court certified the collective action in an attempt to reduce HomeBanc's potential liability.  Therefore, Plaintiff seeks to restrain, or in the alternative limit, Defendants ex-parte communications with potential class members and that a corrective notice be sent to include, but not limited to, informing members to disregard Defendants threats of adverse employment action, description of the lawsuit and members rights to participate in this suit.

## BACKGROUND

This case is a "collective action" under the Fair Labor Standards Act ("FLSA"), similar to a class action prosecuted under Federal Rules of Civil Procedure 23.  *See Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003).  Plaintiff seeks to represent a class of loan officers who were not paid overtime wages in violation of 29 U.S.C. §207(a)(1).  A collective action, like a class action, prevents piecemeal litigation, inconsistent adjudications and difficult res Judicata issues. *See Donovan v. University of Texas at El Pasco*, 643 F. 2d 1201, 1206-07 (5th Cir. 1981).

However, unlike a class action, in collective action class members will not participate in the recovery unless they specifically opt-into the class upon receiving court-supervised notice of the pending action. *See Hipp v. Liberty National Life Insurance Co*, 252 F.3d 1208, 1214-15 (11th Cir 2001).[2]

In addition to the instant case there exist eleven related cases, seven in the United States District Court, Middle District of Florida and four in the United States District Court, Southern District of Florida. Currently fourteen (14) of HomeBanc's current or former loan officers have commenced related actions against it for denying them overtime to which they are statutorily entitled,[3] and/or filed consents to become Parties Plaintiff in the instant case[4]. On May 4, 2006 Plaintiff filed a Motion to Consolidate the related cases and on the same day, Defendants filed a Motion to Consolidate related cases filed in the Middle District. Thereafter, on May 11, 2006 Plaintiff filed a Motion for Collective Action along with a proposed notice. Said motions are pending before this Court.

## FACTS

The facts upon which this motion is based are compelling:

---

[2] While *Hipp* was an action maintained under the Age Discrimination in Employment Act, the *Hipp* analysis is relevant to FLSA collective actions because "[p]laintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R.Civ.P. 23." *Hipp* 252 F.3d at 1216 (citation omitted).

[3] King v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-96-FtM-33-SPC; Marchand v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-112-FtM-29-DNF; Rodriquez v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-135-FtM-33-DNF; Tyler v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 0:06-cv-60332-DTKN; Mellman v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-97-FtM-33-DNF; John S.Rudolph and Amanda L. Rudolph v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-196-FtM-33-SPC; Gottlieb v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-197-FtM-29-DNF; Finneran v. Homebanc Mortgage Corporation and Patrick Flood, Case No. 06-80386-CIV-PAINE; Robinson v. Homebanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-203-FtM-29SPC; Sepanski v. . HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60597-CIV-DIMITROLULEAS; Gentinetta v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60599-CIV-UNGAO-BENAGAS; Drew v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60599-CIV-COHN and Seta King filed a consent to opt-in to King v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-96-FtM-33-SPC.

[4] The Consent to Become a Party Plaintiff from Robert Rodriquez and Kevin Finneran are forthcoming.

MARSHALL A. ADAMS, P.A.
One East Broward Blvd., Suite 1410 Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

1.      Of the fourteen plaintiffs who filed complaints against HomeBanc on or after February 21, 2006 alleging violations of the Fair Labor Standards Act ("FLSA") five were current employees of HomeBanc; Bradford T. King ("King"), Mark Mellman ("Mellman"), Lucian Robinson ("Robinson"), Cary Marchand ("Marchand") and Kevin Finneran ("Finneran").

2.      On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office. At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is involved is "grounds for immediate termination." (See Exhibits A, Affidavit of Lucian Robinson; Exhibit B, Affidavit of Cary Marchand and Exhibit C, Affidavit of Mark Mellman). He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock. (See Exhibits A, B and C). Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger. (See Exhibits A, B and C).

3.      Prior to Mr. Robinson becoming a party plaintiff and unbeknownst to Mr. Fullick that Mr. Robinson was a potential plaintiff, Mr. Fullick solicited the aid of Mr. Robinson to fire Mr. Mellman. (See Exhibit A). Specifically, Mr. Fullick asked Mr. Robinson to state that Mr. Mellman's performance in the AmeriVest[5] alliance office was inadequate. (See Exhibit A). At the time of Mr. Fullick's request, Mr. Robinson, Mr. Mellman and Jo Beth Nicoll had worked in the AmeriVest alliance office for eleven months. (See Exhibit A and C). Prior to the time Mr. Mellman filed his Complaint his job performance had not been at issue. (See Exhibit C).

---

[5]      HomeBanc provides mortgage banking services such as home loans and other mortgage products that are sold to the consumer by through strategic marketing alliances with real estate agencies ("Real Estate Market Alliance" or "RMA") and residential homebuilders ("Builders Services Group" or "BSG"). Loan officers are required to service the alliance offices at set times and hours. (See Docket Number 17, HomeBanc's Answers and Affirmative Defenses "Answer" ¶2); See Docket Number 12, Affidavit of Bradford T. King ¶ 4).

4.     Post filing of the Complaint, Mr. King had private conversations with Nigel Fullick regarding the lawsuit and felt increased hostility from Mr. Fullick.  Mrr. King was initially denied a request for vacation, whereas non-plaintiff similarly situated loan officers are not.

5.     On Friday, May 12, 2006 Mr. Finneran was terminated from his employment with HomeBanc.

6.     On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office.  Mr. Flood announced that it is no secret there is a lawsuit against HomeBanc and stated that those people who are still with the company will be "performance managed out." (See Exhibits A, B and C).

7.     On Thursday, May 18, 2006 Mr. Robinson submitted his resignation to Mr. Flood.  Mr. Flood offered Mr. Robinson future monetary incentives to retract his resignation and conditioned the monetary incentives of Mr. Robinson dismissing his lawsuit. (See Exhibit A).

8.     On Thursday, May 18, 2006 Mr. Flood approached Mr. Marchand and offered him future monetary incentives to dismiss his lawsuit. (See Exhibit B).

9.     On Thursday, May 18, 2006 Mr. Mellman was removed from the AmeriVest alliance office.  Ms. Nicoll, non-plaintiff, was not removed. This adverse employment action was made public to the loan officers located in the Naples office *via* electronic correspondence sent to all loan officers from Mr. Flood. (See Exhibit D).

10.    On Friday, May 19, 2006 HomeBanc held mandatory meetings in the N. Broward office and the Naples office with all loan officers.  Mr. Mellman and Mr. Marchand were contacted prior to the meeting and told that the litigation would be discussed and it was

suggested that they not attend. (See Exhibits B and C). Mr. Marchand attended the Naples meeting. At the meeting, Plaintiff's Complaint was read aloud and all fourteen Plaintiffs were specifically named. Thereafter, HomeBanc solicited loan officers to sign an affidavit confirming their intention not to opt-into the instant case. The meeting was held in a public forum devoid of confidentiality. HomeBanc has knowledge of loan officers who signed the affidavits and those who did not. During the meeting HomeBanc stated that if a loan officer did not sign the affidavit they will not be retaliated against. (See Exhibit B).

11.     The conduct of HomeBanc is calculated to incite some Members to feel that it is being wrongfully sued and to send the message to all that Plaintiffs **WILL** be retaliated against, while stating publicly that there will be no retaliation on the heels of firings, removal from lucrative positions and resignations of loan officers.

### ARGUMENT

### I.     This Court Has the Authority to Restrain or Limit Defendants' Ex-Parte Communications with Putative Class Members

As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in §216(b) collective actions. *See Hoffman-la Robe Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989).    The court may restrict or limit ex-parte communications with loan officers where, as in the instant case, the motion for collective action has been filed but certification has not yet been decided. *See Burrell v. Crown Central Petroleum Inc.*, 176 F.R.D. 239(E.D. Tex. 1997)(where alleged class action has been filed but certification has not yet been decided, court may issue limitation on ex-parte contact); *see also Jackson v. Motel 6 Multipurposes, Inc.*, 130 F. 3d 999 (11th Cir. 1997)(11th Circuit severely restricted district court's authority to authorize pre-certification communication).

A court's authority to control counsel's conduct in a §216(b) collective action includes the authority to manage the process of joining multiple parties in a manner that is orderly, sensible and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. *See Hoffman-la Roche*, 49 U.S. 165 at 171. Because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 100,101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

Courts have found a need to limit communications with absent class members where communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F. 2d 1193, 1206 (11th Cir. 1985); *Belt*, 299 F. 2d at 667.

## II.   **HomeBanc's Communication Is Coercive**

HomeBanc is intimidating and coercing members in an attempt to prevent member participation in the collective action. Communication from an employer has heightened potential for coercion because where the absent class members and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive. *See Kleiner*, 751 F. 2d at 1202; *Hampton Hardware Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994). HomeBanc exploited their relationship with members by suggesting that participation in this action could affect the member's employment. First, loan officers were told that if they talk about the instant lawsuit, or any lawsuit against HomeBanc, it is "grounds for immediate termination." *See Belt*, 299 F. 2d at 668 (communication suggesting that the lawsuit could affect the potential class members employment is coercive). This edict

also has the effect of preventing current Plaintifff's from explaining the nature of the cases to putative Plaintiffs. Second, loan officers were told that the instant law suit could affect the price of Home Banc's stock. *See Shores v. Publix Super Markets, Inc.*, 1996 WL 859985 WL (M.D. Fla. Nov. 25, 1996), Shores, 1997 WL 714787 at \*5 (Defendant's communication to potential class members that an adverse result in the lawsuit could hurt the price of its stock and put members' jobs at risk found to be coercive and intended to discourage class members from participating in the litigation). Third, loan officers were told that plaintiffs still employed with HomeBanc would be "performance managed out." This comment was confirmed by the public removal of Mr. Mellman from the AmeriVest alliance office and the termination of Kevin Finneran. The message is clear; if you participate in the instant lawsuit your employment status will be affected.

**III.    HomeBanc's Conduct Is An Attempt to Undermine The Purpose of the Collective Action**

HomeBanc is taking systematic action to intimidate and coerce putative class members ("members") in an attempt to prevent member participation in the collective action. HomeBanc threatened loan officer's job status should they decide to participate in the instant litigation and shortly thereafter held a mandatory meeting wherein they solicited affidavits informing of member's intent not to opt-into the instant lawsuit. (See Exhibits A, B, and C).

HomeBanc's tactics are coercive in nature and are designed to undermine the purpose of the collective action by pressuring members to sign an affidavit stating their intent not to opt-into the instant lawsuit. [I]n-person solicitation may exert pressure and often demands an immediate response. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447,456, 98 S. Ct. 1912,1918, 56 L. ED.2d 444(1978). **Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided**

**presentation of the facts, without opportunity for rebuttal.** *See Kleiner*, 751 F.2d at 1202. The damage could be irreparable. *See Abdallah v. Coca-Cola Company, 186 F.R.D. 672* (N.D. Ga. 1999) citing *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985). Under such circumstances, "the absence of explicit proof or findings of harm or injury is immaterial." *See Ohralik* at 468, 98 S. Ct. at 1924, and the trial court is empowered to enter prophylactic orders designed to prevent harm before it happens[6]. *Id.* at 458, 464-68, 98 S. Ct. at 1922-24.

It is clear that the point of HomeBanc's actions was to solicit as many exclusions as possible before this Court certified the collective action in an attempt to reduce HomeBanc's potential liability. *See, Hampton Hardware*, 156 F.R.D. 630 at 633. (Communications improper as an attempt to "reduce the class members [sic] participation in the lawsuit based on threats to their pocketbooks").

The fact that HomeBanc stated that no retaliation would occur does not cure any coercive effect of HomeBanc's actions. *See Belt*, 229 F.2d at 668 (assurances against retaliation do not ameliorate fear of retaliation created by the communication's overall tone and the employer-employee relationship).

**CONCLUSION**

Based on the foregoing, HomeBanc's conduct meets the requisite standard for restriction as an improper communication with absent class members. HomeBanc's communication is coercive and an attempt to undermine the purpose of the collective action. Corrective action and Sanctions are necessary to correct this misconduct.

WHEREAS, Plaintiff requests that Defendants be restricted and or limited in their communications with potential class members regarding the current action until the end of trial,

---

[6]     While the Ohralik analysis involved a subsequent as opposed to a prior restraint, however, the decision's approval of prophylactic rules comports with the policy encouraging the effective oversight of commercial speech. *See Kleiner*, 751 F. 2d at 1202, fn. 26

**MARSHALL A. ADAMS, P.A.**

One East Broward Blvd., Suite 1410 Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

seeks issuance of corrective notices and an order of sanction and rebuke, including all reasonable attorneys' fees and costs incurred in bringing this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by U.S. Mail, this 23rd day of May, 2006, to: R. Scott Ferber, Esquire, King & Spalding LLP, 1180 Peachtree Street, N.E., Atlanta, Georgia, 30309-3521 and Denise L. Wheeler, Esquire, Fowler White Boggs Banker, 2201 Second Street Ft. Myers, Florida 33901.

MARSHALL A. ADAMS, P.A.
*Attorneys for Plaintiff*
One East Broward Boulevard
Suite 1410
Ft. Lauderdale, Florida 33301
Phone: (954) 764-6450
Fax: (954) 764-6448


By:/s/E. NannettePiccolo
Marshall A. Adams, Esquire
Florida Bar: 712426
E. Nannette Piccolo, Esquire
Florida Bar: 0530311

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No. 2:06-cv-203-FtM 29SPC

LUCIAN ROBINSON,
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.                                   **COLLECTIVE ACTION**

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation,
and PATRICK S. FLOOD,

      Defendants.

_____/

## **AFFIDAVIT OF LUCIAN ROBINSON**

**STATE OF FLORIDA**

**COUNTY OF LEE**

      BEFORE ME, the undersigned authority, personally appeared LUCAIN ROBINSON, who, after being dully sworn under oath, deposes and states as follows:

      1.     My name is LUCIAN ROBINSON. I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

      2.     I am a former employee with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action. I recently tendered my resignation of employment with HomeBanc on May 18, 2006. I am a plaintiff in this action.

**EXHIBIT "A"**

3.      On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office. At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is involved is "grounds for immediate termination." He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock. Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger.

4.      Prior to becoming a party plaintiff I was solicited by Mr. Fullick to fire Mr. Mellman. Specifically, Mr. Fullick asked me to state that Mr. Mellman's performance in the AmeriVest alliance office was inadequate. At the time of Mr. Fullick's request, I, Mr. Mellman and Jo Beth Nicoll had worked in the AmeriVest alliance office for eleven months. This was the first time I had been asked to comment about Mr. Mellman's job performance, which to my knowledge was satisfactory. The production at AmeriVest was evaluated on a group basis rather than an individual basis, therefore any performance deficiencies would be based upon the entire group.

5.      On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office. Mr. Flood announced that it is no secret there is a lawsuit against HomeBanc and stated that those people who are still with the company will be "performance managed out."

6.      On Thursday, May 18, 2006 I tendered my resignation to Mr. Flood. Mr. Flood offered me future monetary incentives to retract my resignation and conditioned the monetary incentives on dismissing my lawsuit against HomeBanc.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _____day of _____, 2006.


_____
                    LUCIAN ROBINSON


SWORN   TO   AND   SUBSCRIBED   before   me   this   _____day   of

_____, 2006, by LUCIAN ROBINSON, who is _____personally known to me, or

_____who has produced _____as identification.


_____
NOTARY PUBLIC


_____
            Printed Name
            My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  2:06-CV-97-FTM-33 DNF

MARK MELLMAN,
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation
and PATRICK S. FLOOD,

      Defendants.

_____/

## AFFIDAVIT OF MARK MELLMAN

**STATE OF FLORIDA**

**COUNTY OF LEE**

BEFORE ME, the undersigned authority, personally appeared MARK MELLMAN, who, after being dully sworn under oath, deposes and states as follows:

1.    My name is MARK MELLMAN.  I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

2.    I am employed with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action, in the position of loan officer. I am a plaintiff in this action.

3.    HomeBanc has a pattern and practice of requiring loan officer's to perform "floor coverage" in HomeBanc's affiliated offices such as contracted builders',

**EXHIBIT "B"**

realtors and affiliated businesses' offices. HomeBanc had commitments with these businesses to have HomeBanc loan officers there at set times. Specifically, I was assigned to the AmeriVest alliance office. I worked at AmeriVest with Lucian Robinson and Jo Beth Nicoll. Our production was calculated on a group rather than an individual basis. Therefore, if production was low it was a result of the group's efforts not an individual loan officer. Prior to filing the instant action I had not been counseled regarding my job performance at the AmeriVest alliance office nor in general.

4.      On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office. At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is involved is "grounds for immediate termination." He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock. Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger.

5.      On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office. Mr. Flood announced that it is no secret there is a lawsuit against HomeBanc and stated that those people who are still with the company will be "performance managed out."

6.      On Thursday, May 18, 2006 I was removed from the AmeriVest alliance office. Ms. Nicoll was not.

7.      On Friday, May 19, 2006 HomeBanc held mandatory meetings in the N. Broward office and the Naples office with all loan officers. I was contacted prior to the

meeting and told that the litigation would be discussed and it was suggested that I not attend. I did not attend the meeting.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _____day of _____, 2006.


_____

MARK MELLMAN

SWORN TO AND SUBSCRIBED before me this _____day of _____, 2006, by MARK MELLMAN, who is _____personally known to me, or _____who has produced _____as identification.


_____

NOTARY PUBLIC


_____

Printed Name
My Commission Expires:

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.  2:06-CV-112-FtM-29DNF

CARY MARCHAND,
On behalf of himself and all others
similarly situated,

       Plaintiff,

v.

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation
and PATRICK S. FLOOD,

       Defendants.
_____/

## AFFIDAVIT OF CARY MARCHAND

**STATE OF FLORIDA**

**COUNTY OF LEE**

BEFORE ME, the undersigned authority, personally appeared CARY MARCHAND, who, after being dully sworn under oath, deposes and states as follows:

1.     My name is CARY MARCHAND.  I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

2.     I am employed with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action.  I am a plaintiff in this action.

3.     On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office.  At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is

1

**EXHIBIT "C"**

involved is "grounds for immediate termination."   He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock.  Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger.

4.      On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office. Mr. Flood announced that it is no secret there is a lawsuit against HomeBanc and stated that those people who are still with the company will be "performance managed out."

5.      On Thursday, May 18, 2006 Mr. Flood approached me and offered me future monetary incentives to dismiss my lawsuit.

6.      On Friday, May 19, 2006 HomeBanc held mandatory meetings in the N. Broward office and the Naples office with all loan officers. I was contacted prior to the meeting and told that the litigation would be discussed and it was suggested that I not attend. However, I did attend the meeting. At the meeting, Plaintiff's Complaint was read aloud and all fourteen Plaintiffs were specifically named. Thereafter, HomeBanc solicited loan officers to sign an affidavit confirming their intention not to opt-into the instant case. HomeBanc has knowledge of loan officers who signed the affidavits and those who did not. During the meeting HomeBanc stated that if a loan officer did not sign the affidavit they will not be retaliated against.

7.      I know and believe that a number of the other loan officers present were also aware that Mark Mellman, another plaintiff named at the meeting, had been taken off of an assignment and moved to what would be a less lucrative assignment the day before. I and other loan officers present knew that Kevin Finneran who is also a plaintiff named at the meeting was fired earlier in the week.

8.     HomeBanc refused to provide me with a copy of the affidavit they encouraged loan officers to sign.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _____ day of _____, 2006.


_____
CARY MARCHAND


SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2006, by CARY MARCHAND, who is _____ personally known to me, or _____ who has produced _____ as identification.


_____
NOTARY PUBLIC


_____
Printed Name
My Commission Expires:


3
MARSHALL A. ADAMS, P.A.
One East Broward Boulevard, Suite 1410, Fort Lauderdale, FL 33301 Telephone 954.764.6450 Fax 954.764.6448

**From:** Flood, Thomas
**Sent:** Thu 5/18/2006 4:17 PM
**To:** All Naples Loan Officers
**Cc:** Polin, Joanne; Smith, Albert
**Subject:** Amerivest


Team:


One of our key improvement opportunities is to improve our share capture in our #1 RMA at Amerivest. We will immediately be making some staffing changes that both Amerivest Realtors and HomeBanc leaders support. Feedback from Amerivest suggested our direct prospecting needs improvement and more-LO product knowledge is essential to build the business to acceptable levels. On occasion, our required office hours were inconsistent. We thank all those LO's who have made efforts to help this account become a success, but HomeBanc must meet the challenges of the marketplace and increase share now in this critical account.

The revised staff will continue to be anchored by Jo Beth Nicole. Jo Beth has gone above and beyond in leading our efforts for several months, and received a resounding endorsement from the Amerivest Realtors. The line up will go as follow:

1/Jo Beth Nicole    Lead
2/Joe Jayne    (15 years experience, 7 years at HomeBanc, living in Naples)
3/Alex Gomez    (Spanish specialist, all other agent opportunities)

4/Open for auditions   (Mike Bassani, Adrian Jacobs...)

We would like a total of 4-5 focused on working this account internally, externally, and agents in home offices. This account will require focus, intensity, passion in order to elevate. I ask everyone to support these changes, and future changes. Assignments for all accounts will be well thought, consensus driven, and have a territory factor to final decisions.

More RMA's are on the horizon... be ready to go!


*Tom Flood*
*Senior Vice President/ Area Manager*
*Office Direct Ext: 44010*
*Direct Phone: 786-275-1010*
*Fax: 786-275-1210*
*Cell Phone: 305-510-7654*
*www.homebanco.com/tflood*
*email: tflood@homebanco.com*


5/19/2006

**EXHIBIT "D"**