IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

Case No.  2:06-CV-96-FtM-33SPC

BRADFORD T. KING,
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.                                    **COLLECTIVE ACTION**

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation,
and PATRICK S. FLOOD,

      Defendants.
_____/

## PLAINTIFF, BRADFORD T. KING'S, AMENDED AND SUPPLEMENTAL MOTION TO RESTRAIN, OR IN THE ALTERNATIVE LIMIT, DEFENDANTS' EX-PARTE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS THROUGHOUT TRIAL AND TO ISSUE CORRECTIVE NOTICE

Plaintiff, BRADFORD T. KING, by and through his undersigned counsel, files this Amended and Supplemental Motion to Restrain, or in the Alternative Limit, Defendants' Ex-Parte Communications with Putative Class Members Throughout Trial and to Issue Corrective Notice and states as follows:

### SUMMARY

HomeBanc is taking systematic action to intimidate and coerce putative class members ("members") in an attempt to prevent member participation in the collective action[1].  Plaintiffs have been fired, removed from lucrative accounts and warnings concerning the ramifications of

---

[1] Plaintiff's Motion for Collective Action Certification Pursuant to 29 U.S.C. §216(b) and Court Supervised Notification of Putative Plaintiffs and Memorandum In Support Thereof ("Motion for Collective Action") has been filed, however, certification has not yet been decided.

participating in the action have been made.  This conduct is violative of the law and needs to be restrained, sanctions issued and explanatory notices and corrective notices sent to the members.

### Summary of the Objectionable Conduct

Homebanc has warned members of the potential cost to them.  Members are advised that if they talk about pending lawsuits it is grounds for "immediate termination."  They have been told that participants in the lawsuit are being "performance managed out" of the company; hence their livelihood is at jeopardy.  Members have witnessed Plaintiffs being fired, targeted and retaliated against; confirming HomeBanc's threats that participating in the lawsuit will result in adverse employment action.  In short, the clear message HomeBanc is sending is that if a member participates in the lawsuit they will pay.  On the heels of these threats, HomeBanc held a mandatory meeting to discuss the instant lawsuit and solicited affidavits from members confirming their intention not to opt-into the lawsuit.

It is clear that the point of HomeBanc's actions was to solicit as many exclusions as possible before this Court certified the collective action in an attempt to reduce HomeBanc's potential liability.  Therefore, Plaintiff seeks to restrain, or in the alternative limit, Defendants ex-parte communications with potential class members and that corrective notice be sent to include, but not limited to, informing members to disregard Defendants threats of adverse employment action, description of the lawsuit and members rights to participate in this suit.

### BACKGROUND

This case is a "collective action" under the Fair Labor Standards Act ("FLSA"), similar to a class action prosecuted under Federal Rules of Civil Procedure 23.  *See Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664 (E.D. Tex. 2003).  Plaintiff seeks to represent a class of loan officers who were not paid overtime wages in violation of 29 U.S.C. §207(a)(1).  A collective action, like a

class action, prevents piecemeal litigation, inconsistent adjudications and difficult res Judicata issues. *See Donovan v. University of Texas at El Pasco*, 643 F. 2d 1201, 1206-07 (5th Cir. 1981). However, unlike a class action, in a collective action class members will not participate in the recovery unless they specifically opt-into the class upon receiving court-supervised notice of the pending action. *See Hipp v. Liberty National Life Insurance Co*, 252 F.3d 1208, 1214-15 (11th Cir 2001).[2]

In addition to the instant case there exist eleven related cases, seven in the United States District Court, Middle District of Florida and four in the United States District Court, Southern District of Florida. Currently fourteen (14) of HomeBanc's current or former loan officers have commenced related actions against it for denying them overtime to which they are statutorily entitled,[3] and/or filed consents to become Parties Plaintiff in the instant case[4]. On May 4, 2006 Plaintiff filed a Motion to Consolidate the related cases and on the same day, Defendants filed a Motion to Consolidate related cases filed in the Middle District. Thereafter, on May 11, 2006 Plaintiff filed a Motion for Collective Action along with a proposed notice. Said motions are pending before this Court.

---

[2] While *Hipp* was an action maintained under the Age Discrimination in Employment Act, the *Hipp* analysis is relevant to FLSA collective actions because "[p]laintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R.Civ.P. 23." *Hipp* 252 F.3d at 1216 (citation omitted).

[3] King v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-96-FtM-33-SPC; Marchand v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-112-FtM-29-DNF; Rodriquez v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-135-FtM-33-DNF; Tyler v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 0:06-cv-60332-DTKN; Mellman v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-97-FtM-33-DNF; John S.Rudolph and Amanda L. Rudolph v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-196-FtM-33-SPC; Gottlieb v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-197-FtM-29-DNF; Finneran v. Homebanc Mortgage Corporation and Patrick Flood, Case No. 06-80386-CIV-PAINE; Robinson v. Homebanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-203-FtM-29SPC; Sepanski v. . HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60597-CIV-DIMITROLULEAS; Gentinetta v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60599-CIV-UNGAO-BENAGAS; Drew v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 06-60599-CIV-COHN and Seta King filed a consent to opt-in to King v. HomeBanc Mortgage Corporation and Patrick Flood, Case No. 2:06-cv-96-FtM-33-SPC.

[4] The Consent to Become a Party Plaintiff from Robert Rodriquez and Kevin Finneran are forthcoming.

MARSHALL A. ADAMS, P.A.

One East Broward Blvd., Suite 1410 Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

## FACTS

The facts upon which this motion is based are compelling:

1.      Of the fourteen plaintiffs who filed complaints against HomeBanc on or after February 21, 2006 alleging violations of the Fair Labor Standards Act ("FLSA") five were current employees of HomeBanc; Bradford T. King ("King"), Mark Mellman ("Mellman"), Lucian Robinson ("Robinson"), Cary Marchand ("Marchand") and Kevin Finneran ("Finneran").

2.      On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office. At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is involved is "grounds for immediate termination." (See Exhibit A, Affidavit of Lucian Robinson; Exhibit B, Affidavit of Cary Marchand and Exhibit C, Affidavit of Mark Mellman). He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock. (See Exhibits A, B and C). Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger. (See Exhibits A, B and C).

3.      Prior to becoming a party plaintiff Mr. Robinson was solicited by Mr. Fullick to adversely affect Mr. Mellman's employment with HomeBanc. Specifically, Mr. Fullick stated that "something has to be done to remove him from the account." (See Exhibit A). Mr. Fullick asked Mr. Robinson to state that Mr. Mellman's performance in the AmeriVest alliance office was inadequate. (See Exhibit A). At the time of Mr. Fullick's request, Mr. Robinson, Mr. Mellman and Jo Beth Nicoll had worked in the AmeriVest alliance office for eleven months. (See Exhibits A and C). This was the first time that Mr. Robinson had been asked to comment about Mr. Mellman's job performance, which to his knowledge was satisfactory. (See Exhibit

A). Prior to the time Mr. Mellman filed his Complaint his job performance had not been at issue. (See Exhibit C). The production at AmeriVest was evaluated on a group basis rather than an individual basis, therefore any performance deficiencies would be based upon the entire group. (See Exhibit A and C).

4.      Post filing of the Complaint, Mr. King had private conversations with Nigel Fullick regarding the lawsuit and felt increased hostility from Mr. Fullick. Mr. King was initially denied a request for vacation, whereas non-plaintiff similarly situated loan officers are not.

5.      On Friday, May 12, 2006 Mr. Finneran was terminated from his employment with HomeBanc.

6.      On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office. Mr. Flood announced that it is no secret there is a lawsuit against HomeBanc and stated that those people who are still with the company will be "performance managed out." (See Exhibits B and C).

7.      On Thursday, May 18, 2006 Mr. Robinson submitted his resignation to Mr. Flood. Mr. Flood offered Mr. Robinson future monetary incentives to retract his resignation and conditioned the monetary incentives of Mr. Robinson dismissing his lawsuit. (See Exhibit A).

8.      On Thursday, May 18, 2006 Mr. Flood approached Mr. Marchand and offered him future monetary incentives to dismiss his lawsuit. (See Exhibit B).

9.      On Thursday, May 18, 2006 Mr. Mellman was removed from the AmeriVest alliance office. Ms. Nicoll, non-plaintiff, was not removed. This adverse employment action was made public to the loan officers located in the Naples office *via* electronic correspondence sent to all loan officers from Mr. Flood. (See Exhibit D).

10. On Friday, May 19, 2006 HomeBanc held mandatory meetings in the N. Broward office and the Naples[5] office with all loan officers. Mr. Mellman and Mr. Marchand were contacted prior to the meeting and told that the litigation would be discussed and it was suggested that they not attend. (See Exhibits B and C). Mr. Marchand attended the Naples meeting. At the meeting, Plaintiff's Complaint was read aloud and all fourteen Plaintiffs were specifically named. Thereafter, HomeBanc solicited loan officers to sign an affidavit confirming their intention not to opt-into the instant case. The meeting was held in a public forum devoid of confidentiality. HomeBanc has knowledge of loan officers who signed the affidavits and those who did not. During the meeting HomeBanc stated that if a loan officer did not sign the affidavit they will not be retaliated against. (See Exhibit B).

11. The conduct of HomeBanc is calculated to incite some members to feel that it is being wrongfully sued and to send the message to all that Plaintiffs **WILL** be retaliated against, while stating publicly that there will be no retaliation on the heels of firings, removal from lucrative positions and resignations of loan officers.

## ARGUMENT

### I. This Court Has the Authority to Restrain or Limit Defendants' Ex-Parte Communications with Putative Class Members

As in Rule 23 class actions, courts have the authority to govern the conduct of counsel and parties in §216(b) collective actions. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). The court may restrict or limit ex-parte communications with loan officers where, as in the instant case, the motion for collective action has been filed but certification has not yet been decided. *See Burrell v. Crown Central Petroleum Inc.*, 176 F.R.D. 239 (E.D. Tex. 1997)(where alleged class action has been filed but

---

[5] Plaintiff is aware of the meetings held at the N. Broward office and the Naples office, however, like meetings may have been held throughout the company.

MARSHALL A. ADAMS, P.A.
One East Broward Blvd., Suite 1410 Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

certification has not yet been decided, court may issue limitation on ex-parte contact); *see also Jackson v. Motel 6 Multipurposes, Inc.*, 130 F. 3d 999 (11th Cir. 1997)(11th Circuit severely restricted district court's authority to authorize pre-certification communication).

A court's authority to control counsel's conduct in a §216(b) collective action includes the authority to manage the process of joining multiple parties in a manner that is orderly, sensible and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. *See Hoffman-La Roche*, 49 U.S. 165 at 171. Because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, "a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 100,101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

Courts have found a need to limit communications with absent class members where communications were misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit. *See Kleiner v. First Nat. Bank of Atlanta*, 751 F. 2d 1193, 1206 (11th Cir. 1985); *Belt*, 299 F. 2d at 667.

## II.    HomeBanc's Communication Is Coercive

HomeBanc is intimidating and coercing members in an attempt to prevent member participation in the collective action. Communication from an employer has heightened potential for coercion because where the absent class members and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive. *See Kleiner*, 751 F. 2d at 1202; *Hampton Hardware Inc. v. Cotter & Company, Inc.*, 156 F.R.D. 630 (N.D. Tex. 1994). HomeBanc exploited their relationship with members by suggesting that participation in this action could affect the member's employment. First, loan

officers were told that if they talk about the instant lawsuit, or any lawsuit against HomeBanc, it is "grounds for immediate termination." *See Belt*, 299 F. 2d at 668 (communication suggesting that the lawsuit could affect the potential class members employment is coercive). This edict also has the effect of preventing current Plaintiff's from explaining the nature of the cases to putative Plaintiffs. Second, loan officers were told that the instant law suit could affect the price of Home Banc's stock. *See Shores v. Publix Super Markets, Inc.*, 1996 WL 859985 WL (M.D. Fla. Nov. 25, 1996), Shores, 1997 WL 714787 at *5 (Defendant's communication to potential class members that an adverse result in the lawsuit could hurt the price of its stock and put members' jobs at risk found to be coercive and intended to discourage class members from participating in the litigation). Third, loan officers were told that plaintiffs still employed with HomeBanc would be "performance managed out." This comment was confirmed by the public removal of Mr. Mellman from the AmeriVest alliance office and the termination of Kevin Finneran. The message is clear; if you participate in the instant lawsuit your employment status will be affected.

The fact that HomeBanc stated that no retaliation would occur does not cure any coercive effect of HomeBanc's actions. *See Belt*, 229 F.2d at 668 (assurances against retaliation do not ameliorate fear of retaliation created by the communication's overall tone and the employer-employee relationship).

## III.   HomeBanc's Conduct Is An Attempt to Undermine The Purpose of the Collective Action

HomeBanc is taking systematic action to intimidate and coerce putative class members in an attempt to prevent member participation in the collective action. HomeBanc threatened loan officer's job status should they decide to participate in the instant litigation and shortly thereafter

held as mandatory meeting, wherein they demanded affidavits informing of their intent not to opt-into the instant lawsuit. (See Exhibits A, B, and C).

HomeBanc's tactics are coercive in nature and are designed to undermine the purpose of the collective action by pressuring members to sign an affidavit stating their intent not to opt-into the instant lawsuit. [I]n-person solicitation may exert pressure and often demands an immediate response. *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447,456, 98 S. Ct. 1912,1918, 56 L. ED.2d 444(1978). **Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the facts, without opportunity for rebuttal.** *See Kleiner*, 751 F.2d at 1202. The damage could be irreparable. *See Abdallah v. Coca-Cola Company, 186 F.R.D. 672* (N.D. Ga. 1999) citing *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1033 (E.D. Wash. 1985). Under such circumstances, "the absence of explicit proof or findings of harm or injury is immaterial." *See Ohralik* at 468, 98 S. Ct. at 1924, and the trial court is empowered to enter prophylactic orders designed to prevent harm before it happens[6]. *Id.* at 458, 464-68, 98 S. Ct. at 1922-24.

It is clear that the point of HomeBanc's actions was to solicit as many exclusions as possible before this Court certified the collective action in an attempt to reduce HomeBanc's potential liability. *See Hampton Hardware*, 156 F.R.D. 630 at 633. (Communications improper as an attempt to "reduce the class members [sic] participation in the lawsuit based on threats to their pocketbooks"). In *Hipp*, the Eleventh Circuit specifically considered the standard for permitting court-supervised collective actions. *See Hipp* 252 F.3d at 1218. The procedure required by *Hipp* cannot be subject to circumvention. The Court reviews the pleadings and

---

[6] While the Ohralik analysis involved a subsequent as opposed to a prior restraint, however, the decision's approval of prophylactic rules comports with the policy encouraging the effective oversight of commercial speech. *See Kleiner*, 751 F. 2d at 1202, fn. 26

9

MARSHALL A. ADAMS, P.A.
One East Broward Blvd., Suite 1410 Fort Lauderdale, FL 33301 - 954.764.6450 Fax 954.764.6448

affidavits and determines whether Corroboration is warranted or after discovery is conducted. *Id.* If Discovery warrants, a motion to decertify can be filed. *Id.*

Defendant is attempting to coerce affidavits from its loan officers through intimidation, (loan officers fired and taken off accounts or resigned and Defendant stating that Plaintiffs would be "performance managed out"), misinformation ("Plaintiffs are trying to take down the company") and other improper means. It will likely file the solicited affidavits in an attempt to block certification. Defendant is improperly attempting to short circuit the procedure set forth in *Hipp* and prevent the matter from proceeding properly. Any such affidavits are hearsay and would require deposition testimony and other discovery, such as the weekly sales activity reports such as those provided by the Plaintiff. (See Exhibit E).

Furthermore, the tactics used by Defendants warrant sanctions, but now it is clear that the matter is of an emergency nature. The Court should, in addition to restraining further conduct, require Defendants to provide the names and addresses of all loan officers to whom it sent the mailing so that the Plaintiff can likewise do so. Additionally, the weekly sales activity reports of all of the loan officers represented in this matter have exceeded forty hours and approximated 60 or more hours.

## CONCLUSION

Based on the foregoing, HomeBanc's conduct meets the requisite standard for restriction as an improper communication with absent class members. HomeBanc's communication is coercive and an attempt to undermine the purpose of the collective action. Corrective action and Sanctions are necessary to correct this misconduct.

WHEREAS, Plaintiff requests that Defendants be restricted and or limited in their communications with potential class members regarding the current action until the end of trial,

seeks issuance of corrective notices and an order of sanction and rebuke, including all reasonable

attorneys' fees and costs incurred in bringing this Motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served by

U.S. Mail, this 25th day of May, 2006, to: R. Scott Ferber, Esquire, King & Spalding LLP, 1180

Peachtree Street, N.E., Atlanta, Georgia, 30309-3521 and Denise L. Wheeler, Esquire, Fowler

White Boggs Banker, 2201 Second Street Ft. Myers, Florida 33901.

MARSHALL A. ADAMS, P.A.
*Attorneys for Plaintiff*
One East Broward Boulevard
Suite 1410
Ft. Lauderdale, Florida 33301
Phone: (954) 764-6450
Fax: (954) 764-6448

By:/s/E. NannettePiccolo
Marshall A. Adams, Esquire
Florida Bar: 712426
E. Nannette Piccolo, Esquire
Florida Bar: 0530311

MIDDLE DISTRICT OF FLORIDA

Case No. 2:06-cv-203-FtM 29SPC

LUCIAN ROBINSON,
On behalf of himself and all others
similarly situated,

     Plaintiff,

v.                            **COLLECTIVE ACTION**

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation,
and PATRICK S. FLOOD,

     Defendants.

_____/

## **AFFIDAVIT OF LUCIAN ROBINSON**

**STATE OF FLORIDA**

**COUNTY OF LEE**

     BEFORE ME, the undersigned authority, personally appeared LUCIAN ROBINSON, who, after being dully sworn under oath, deposes and states as follows:

     1.     My name is LUCIAN ROBINSON. I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

     2.     I am a former employee with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action. I recently tendered my resignation of employment with HomeBanc on May 18, 2006. I am a plaintiff in this action.

### **EXHIBIT "A"**

On or about April 2006, Nigel Fullick ("Fullick"), Assistant Vice-President, held a mandatory meeting with all loan officers employed in HomeBanc's Naples, Florida office. At the meeting Mr. Fullick warned loan officers that talking about lawsuits in which HomeBanc is involved is "grounds for immediate termination." He further stated that HomeBanc is a publicly traded company and the lawsuit could affect the price of HomeBanc stock. Mr. Fullick ended the meeting by stating that the plaintiffs are trying to take HomeBanc down and advised loan officers not to react to anger.

4.      Prior to becoming a party plaintiff I was solicited by Mr. Fullick to adversely affect Mr. Mellman's employment with HomeBanc. Specifically, Mr. Fullick stated that "something has to be done to remove him from the account." Mr. Fullick asked me to state that Mr. Mellman's performance in the AmeriVest alliance office was inadequate. At the time of Mr. Fullick's request, I, Mr. Mellman and Jo Beth Nicoll had worked in the AmeriVest alliance office for eleven months. This was the first time I had been asked to comment about Mr. Mellman's job performance, which to my knowledge was satisfactory. The production at AmeriVest was evaluated on a group basis rather than an individual basis, therefore any performance deficiencies would be based upon the entire group.

5.      On Friday, May 12, 2006 Tom Flood ("Flood"), Senior Vice-President, Regional Sales Manager, held a mandatory meeting with loan officers employed in HomeBanc's Naples, Florida office. Mr. Flood announced that it is no secret there is a

On Wednesday, May 17, 2006, I tendered my resignation. Mr. Flood offered me future monetary incentives to retract my resignation and conditioned the monetary incentives on dismissing my lawsuit against HomeBanc.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _____ day of _____, 2006.


_____
LUCIAN ROBINSON


SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2006, by LUCIAN ROBINSON, who is _____ personally known to me, or _____ who has produced _____ as identification.


_____
NOTARY PUBLIC


_____
Printed Name
My Commission Expires:

CASE NO. 2:06-CV-97-FTM-33 DNF

MARK MELLMAN,
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation
and PATRICK S. FLOOD,

      Defendants.

_____/

## AFFIDAVIT OF MARK MELLMAN

**STATE OF FLORIDA**

**COUNTY OF LEE**

BEFORE ME, the undersigned authority, personally appeared MARK MELLMAN, who, after being dully sworn under oath, deposes and states as follows:

1.     My name is MARK MELLMAN. I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

2.     I am employed with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action, in the position of loan officer. I began my employment with HomeBanc June, 2004.

3.     In the position of loan officer with HomeBanc, my, as well as other loan officer's, job responsibilities include selling home loans to customers.

MARSHALL A. ADAMS, P.A.
One East Broward Boulevard, Suite 1410, Fort Lauderdale, Fl. 33301 Telephone 954.764.6450 Fax 954.764.6448

**EXHIBIT "B"**

form "floor coverage" in HomeBanc's affiliated offices such as contracted builders', realtors and affiliated businesses' offices. HomeBanc had commitments with these businesses to have HomeBanc loan officers there at set times.

5.      HomeBanc required us to attend Homebanc's offices daily at set times for meetings. In addition we are required to partake in mandatory community service projects.

6.      While employed with HomeBanc I worked approximately sixty (60) hours per week. HomeBanc has a pattern and practice of requiring loan officers to work far in excess of forty (40) hours per week without being paid overtime. HomeBanc required hours from 7:30 a.m. or earlier a.m. to 7:00 p.m. or later, during the week and at least one full day on the week-ends.

7.      HomeBanc compensates its loan officers twice a month via a non-forgivable draw against commission. These draws are charged against commissions until paid in full prior to receiving commission checks.

8.      In 2004, I worked approximately twenty (20) hours each week in overtime over an twenty-eight (28) week period. My claim for overtime is based on time and a half, therefore, I am owed $14,313.60 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $14, 313.60

9.      In 2005 I worked approximately twenty (20) hours each week in overtime over a fifty-one (51) week period. My claim for overtime is based on time and a half, therefore I am owed $48,929.40 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $48,929.40.

over a six (6) week period and continue to work overtime each week. My claim for overtime is based on time and a half, therefore I am owed $3,748.80 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $3,748.80.

11.     In addition, I am claiming $500.00 in unpaid commissions for forfeited or reduced commissions earned due to HomeBanc's practice of requiring loan officers to forfeit or reduce their own commissions so that HomeBanc can procure the sale.

12.     I am familiar with and know other similarly situated loan officers who are interested in joining the instant litigation.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _____day of _____, 2006.


_____
MARK MELLMAN


SWORN TO AND SUBSCRIBED before me this _____day of _____, 2006, by MARK MELLMAN, who is _____personally known to me, or _____who has produced _____as identification.


_____
NOTARY PUBLIC

_____
Printed Name
My Commission Expires:

MARSHALL A. ADAMS, P.A.
One East Broward Boulevard, Suite 1410, Fort Lauderdale, FL 33301 Telephone 954.764.6450 Fax 954.764.6448

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.

CARY MARCHAND,
On behalf of himself and all others
similarly situated,

      Plaintiff,

v.

HOMEBANC MORTGAGE
CORPORATION, a foreign corporation
and PATRICK S. FLOOD,

      Defendants.
_____/

**AFFIDAVIT OF CARY MARCHAND**

**STATE OF FLORIDA**

**COUNTY OF LEE**

BEFORE ME, the undersigned authority, personally appeared CARY MARCHAND, who, after being dully sworn under oath, deposes and states as follows:

1.    My name is CARY MARCHAND. I am over the age of 18 years and fully competent to testify as to the matters set forth in this Affidavit, which are true and correct, based upon my own personal knowledge, unless indicated to the contrary.

2.    I am employed with HomeBanc Mortgage Corporation ("HomeBanc"), which is one of the Defendants in the above-styled action, in the position of loan officer. I began my employment with HomeBanc June, 2004.

3.    In the position of loan officer with HomeBanc, my, as well as other loan officer's, job responsibilities include selling home loans to customers.

MARSHALL A. ADAMS, P.A.
One East Broward Boulevard, Suite 1410, Fort Lauderdale, FL 33301 Telephone 954.764.6450 Fax 954.764.6448

EXHIBIT "C"

coverage" in HomeBanc's affiliated offices such as contracted builders', realtors and affiliated businesses' offices. HomeBanc had commitments with these businesses to have HomeBanc loan officers there at set times.

5.       HomeBanc required us to attend Homebanc's offices daily at set times for meetings. In addition we are required to partake in mandatory community service projects.

6.       While employed with HomeBanc I worked approximately sixty (60) hours per week. HomeBanc has a pattern and practice of requiring loan officers to work far in excess of forty (40) hours per week without being paid overtime. HomeBanc required hours from 7:30 a.m. or earlier a.m. to 7:00 p.m. or later, during the week and at least one full day on the week-ends.

7.       HomeBanc compensates its loan officers twice a month via a non-forgivable draw against commission. These draws are charged against commissions until paid in full prior to receiving commission checks.

8.       In 2004, I worked approximately twenty (20) hours each week in overtime over an twenty-eight (28) week period. My claim for overtime is based on time and a half, therefore, I am owed $16,228.80 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $16,228.80.

9.       In 2005 I worked approximately twenty (20) hours each week in overtime over a fifty-one (51) week period. My claim for overtime is based on time and a half, therefore I am owed $27,121.80 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $27,121.80.

over a six (6) week period and continue to work overtime each week. My claim for overtime is based on time and a half, therefore I am owed $7,056.00 in unpaid overtime. In addition, I am claiming liquidated damages in the amount equal to unpaid overtime, $7,056.00.

11.     I am familiar with and know other similarly situated loan officers who are interested in joining the instant litigation.

FURTHER AFFIANT SAYETH NAUGHT.

DATED this _28_ day of _Feb._, 2006.

_Cary Marchand_
CARY MARCHAND

SWORN TO AND SUBSCRIBED before me this _28_ day of _Feb_, 2006, by CARY MARCHAND, who is ___personally known to me, or _____who has produced _FL DL_ as identification.



CYNTHIA A. HAMER
MY COMMISSION # DD 303626
EXPIRES: March 25, 2008
Bonded Thru Notary Public Underwriters

_Cynthia Hamer_
NOTARY PUBLIC

_Cynthia Hamer_
Printed Name
My Commission Expires:

MARSHALL A. ADAMS, P.A.
One East Broward Boulevard, Suite 1410, Fort Lauderdale, FL 33301 Telephone 954.764.6450 Fax 954.764.6448

**From:** Flood, Thomas
**Sent:** Thu 5/18/2006 4:17 PM
**To:** All Naples Loan Officers
**Cc:** Polin, Joanne; Smith, Albert
**Subject:** Amerivest


Team:


One of our key improvement opportunities is to improve our share capture in our #1 RMA at Amerivest. We will immediately be making some staffing changes that both Amerivest Realtors and HomeBanc leaders support. Feedback from Amerivest suggested our direct prospecting needs improvement and more LO product knowledge is essential to build the business to acceptable levels. On occasion, our required office hours were inconsistent. We thank all those LO's who have made efforts to help this account become a success, but HomeBanc must meet the challenges of the marketplace and increase share now in this critical account.

The revised staff will continue to be anchored by Jo Beth Nicole. Jo Beth has gone above and beyond in leading our efforts for several months, and received a resounding endorsement from the Amerivest Realtors. The line up will go as follow:

1/Jo Beth Nicole       Lead
2/Joe Jayne            (15 years experience, 7 years at HomeBanc, living in Naples)
3/Alex Gomez           (Spanish specialist, all other agent opportunities)

4/Open for auditions   (Mike Bassani, Adrian Jacobs...)

We would like a total of 4-5 focused on working this account internally, externally, and agents in home offices. This account will require focus, intensity, passion in order to elevate. I ask everyone to support these changes, and future changes.  Assignments for all accounts will be well thought, consensus driven, and have a territory factor to final decisions.

More RMA's are on the horizon... be ready to go!


*Tom Flood*
*Senior Vice President/ Area Manager*
*Office Direct Ext: 44010*
*Direct Phone: 786-275-1010*
*Fax: 786-275-1210*
*Cell Phone: 305-510-7654*
*www.homebanc.com/tflood*
*email: tflood@homebanc.com*


5/19/2006

**EXHIBIT "D"**

## Weekly Activity Summary

**Loan Officer:**   Brad King   **Week Ending:**  26-Mar

**Hours Worked:**   65

**# of PQ's:**   4

**# of Loan Apps Taken:**   1   **# of files turned in**   0

**# of BSG Loans:**   0   **# of Non BSG Loans:**   0

**3 Face to Face Realtor Appts:**

**Name:** Jason Pavich   **Date:**  21-Mar
**Office:** Realty World   **Phone #:** 229-7483
**Follow Up/Notes:** Good meeting

**Name:** Marc Comisar   **Date:**  25-Mar
**Office:** Downing Frye   **Phone #:** 287-5873
**Follow Up/Notes:** Nice meeting

**Name:** JJ Jones   **Date:**  20-Mar
**Office:** Miromar   **Phone #:** 390-7700
**Follow Up/Notes:** Good time

**Top 2 things I learned this week:**

1)   The market is getting better

2)   Home sales are going up

**EXHIBIT "E"**

## Weekly Activity Summary

| | | | |
|---|---|---|---|
| **Loan Officer:** | **Brad King** | **Week Ending:** | **19-Mar** |

**Hours Worked:**   **65**

**# of PQ's:**   **2**

**# of Loan Apps Taken:**   **1**   **# of files turned in**   **0**

**# of BSG Loans:**   **0**   **# of Non BSG Loans:**   **0**

**3 Face to Face Realtor Appts:**

| | | |
|---|---|---|
| **Name:** **Paul Carlan** | **Date:** | **15-Mar** |
| **Office:** **Amerivest** | **Phone #:** | **822-0494** |
| **Follow Up/Notes:** **Good meeting** | | |

| | | |
|---|---|---|
| **Name:** **David Auston** | **Date:** | **17-Mar** |
| **Office:** **Amerivest** | **Phone #:** | **273-1376** |
| **Follow Up/Notes:** **Nice meeting** | | |

| | | |
|---|---|---|
| **Name:** **Erin Kovacevic** | **Date:** | **15-Mar** |
| **Office:** **Amerivest** | **Phone #:** | **287-3650** |
| **Follow Up/Notes:** **New agent needs help** | | |

**Top 2 things I learned this week:**

**1)**   **Always be prepared to be a 10**

**2)**   **Life is good**

## Weekly Activity Summary

**Loan Officer:**    **Brad King**                         **Week Ending:** **12-Mar**

**Hours Worked:**        **65**

**# of PQ's:**           **2**

**# of Loan Apps Taken:**        **0**          **# of files turned in**      **0**

**# of BSG Loans:**       **0**            **# of Non BSG Loans:**       **0**

**3 Face to Face Realtor Appts:**

**Name: Beverly Lalonde**                    **Date:  10-Mar**
**Office: Babon Group**                  **Phone #: 333-3260**
**Follow Up/Notes: Great meeting, I was the teacher**


**Name: Patrick Mcgeachen**                   **Date:  10-Mar**
**Office: Babon Group**                  **Phone #: 333-3260**
**Follow Up/Notes: Prequal on Monday**


**Name: Eric Babon**                          **Date:  10-Mar**
**Office: Babon Group**                  **Phone #: 333-3260**
**Follow Up/Notes: Very busy , Market looks great**


**Top 2 things I learned this week:**

**1)**         **Become a teacher**


**2)**         **our programs for condos are very restrictive**

Weekly Activity Summary

Loan Officer:  Brad King                                          Week Endi    5-Mar

Hours Worked:            65

Percentage of Time Block Completed:          100

# of PQ's:                    2

# of Loan Apps Tak          2                        # of files turned in:          1

# of BSG Loans:             0                        # of Non BSG Loans:          0

# of Face to Face Realtor Appts:       12

Weekend Activity:  Open Houses


Top 3 things learned last week:

        1)          The market is picking up


        2)          y ou never know where your next best refferal source will come from


        3)          Calling on past customers is a good idea


3  Realtor Contacts I made this week:

        Name:      Debbie Turkett
        Office:    Patton Realty
        Phone #:   239-898-4828

        Name:      Peggy Krahling
        Office:    Realty World
        Phone #:   495-9968

        Name:      Jesse Lindberg
        Office:    The Babon Group
        Phone #:   333-3260