## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

| | |
|---|---|
| **BRADFORD T. KING,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>    **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-CV-00096-VMC-SPC** |
| **MARK MELLMAN,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>    **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-cv-00097-VMC-DNF** |

**CARY MARCHARD,**
**On behalf of himself and all others**
**similarly situated,**

        **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

        **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00112-JES-DNF**

---

**ROBERT RODRIGUEZ,**
**On behalf of himself and all others**
**similarly situated,**

        **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

        **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00135-VMC-DNF**

---

**JOHN S. RUDOLPH and AMANDA L.**
**RUDOLPH, on behalf of themselves and**
**all others similarly situated,**

        **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

        **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00196-VMC-SPC**

|  |  |
|---|---|
| **MICHAEL B. GOTTLIEB,** | |
| **On behalf of himself and all others** | |
| **similarly situated,** | |
| | **CIVIL ACTION NO.** |
| **Plaintiff,** | **2:06-cv-00197-JES-DNF** |
| | |
| **v.** | |
| | |
| **HOMEBANC MORTGAGE** | |
| **CORPORATION, a foreign corporation,** | |
| **and PATRICK S. FLOOD,** | |
| | |
| **Defendants.** | |

|  |  |
|---|---|
| **LUCIAN ROBINSON,** | |
| **On behalf of himself and all others** | |
| **similarly situated,** | |
| | **CIVIL ACTION NO.** |
| **Plaintiff,** | **2:06-cv-00203-JES-SPC** |
| | |
| **v.** | |
| | |
| **HOMEBANC MORTGAGE** | |
| **CORPORATION, a foreign corporation,** | |
| **and PATRICK S. FLOOD,** | |
| | |
| **Defendants.** | |

**DEFENDANTS HOMEBANC MORTGAGE CORPORATION AND PATRICK S.
FLOOD'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR
COLLECTIVE ACTION CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b)
AND COURT SUPERVISED NOTIFICATION OF PUTATIVE PLAINTIFFS**

Plaintiffs are fourteen current and former Loan Officers at the same two HomeBanc Stores (Naples / Fort Myers, Florida and North Broward, Florida).[1] But they are seeking to conditionally certify a class of approximately 694 current and former HomeBanc Loan Officers employed at the Company's twenty-two Stores located throughout Florida, Georgia, and North Carolina since February 21, 2003.[2] Because Plaintiffs fail to demonstrate there are other Loan Officers who desire to opt-in and are similarly situated in their job duties and requirements, Plaintiffs' Motion is fatally defective and should be denied.

Alternatively, if the Court concludes that some form of a conditional class is appropriate, which Defendants deny, the Court should conditionally certify two **separate** putative classes limited to Loan Officers who, at some time since February 21, 2004, worked at (1) the Naples / Fort Myers Store or (2) the North Broward Store, which are the two Stores where the named Plaintiffs worked as Loan Officers.

---

[1] Plaintiff Gottlieb worked as a Loan Officer at HomeBanc's South Broward Store from about September 2002 until October 1, 2004 when he requested to be transferred to the Naples / Fort Myers Store.  The South Broward Store is not, however, at issue here because, among other reasons: (a) Plaintiff Gottlieb spent the rest of his employment at HomeBanc — from October 1, 2004 until his resignation on July 20, 2005 (*i.e.*, almost all of the two year FLSA liability period) — at the Naples / Fort Myers Store; (b) Plaintiff Gottlieb waited until April 12, 2006 (*i.e.*, over 18 months **after** he had left the South Broward Store) to file his Complaint; (c) Plaintiff Gottlieb filed his Complaint in the Middle District of Florida as opposed to the Southern District (*i.e.*, where the South Broward Store is located); and (d) there are no other Plaintiffs who worked at the South Broward Store.

[2] See Affidavit of Paul Lopez ¶ 7, appended as Exhibit C.  In previous filings, HomeBanc was listed as having twenty-four Stores, which included overlapping operations at the same facility.  The number of independent HomeBanc Stores is actually twenty-two. Defendants therefore have revised the listed number for technical accuracy.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

HomeBanc is a residential mortgage lender headquartered in Atlanta, Georgia.  Its Loan Officers[3] originate loans through a retail network of twenty-two Stores in Florida, Georgia, and North Carolina, as well as through strategic marketing alliances with real estate agencies ("Real Estate Market Alliance" or "RMA") and residential homebuilders ("Builder Service Group" or "BSG").[4]

HomeBanc organizes its Stores by Region and assigns an Area Manager to oversee the operation and administration of Stores in his or her region, including supervising their Store/Sales Managers.  In Florida, HomeBanc's nine Stores are organized into three Regions, two of which are currently involved in this lawsuit:

- **Region IV-A** includes the North Broward and Palm Beach Stores and is overseen by Area Manager Robert Wills, whose office is located in the North Broward Store; and

---

[3] In their Motion, Plaintiffs assert that "HomeBanc's sales force is comprised of two positions; (*sic*) loan officers and mortgage consultants."  Pl. Motion at 4.  HomeBanc uses the two terms, as well as the term "mortgage banker", interchangeably in describing the "Loan Officer" position.  Ex. C ¶ 6.  For ease of reference, Defendants will use the term "Loan Officer" to describe the position at issue.

[4] See Affidavit of Robert Wills ¶ 3, appended as Exhibit A; Affidavit of Nigel Fullick ¶ 3, appended as Exhibit B.  Plaintiffs contend that HomeBanc has "substantiate[d] the floor coverage requirement (inside sales) at affiliated offices" and "requires loan officers to perform 'floor coverage' at the alliance office during set hours and times."  Pl. Motion at 5-6. Plaintiffs misstate the cited pleadings.  In their Answer and Defenses, Defendants answered Plaintiffs' allegation that "HOMEBANC has a practice of requiring its loan officers to perform 'floor coverage' in real-estate offices, builders' offices and other affiliated businesses to fulfill its obligations to those businesses" simply by stating "that loan officers are given the opportunity to originate residential mortgage loans through RMAs and BSGs. Except as expressly admitted or otherwise stated herein, Defendants deny each and every allegation in [the] paragraph [ ] of the Complaint."  Even the most liberal construction of this response cannot be construed as a substantiation of Plaintiffs' characterization of the RMA and BSG alliances.

- **Region IV-B** includes the Naples / Fort Myers, South Broward, and Miami-Dade Stores and is overseen by Area Manager Tom Flood, whose office is located in the South Broward Store and who visits the Naples / Fort Myers Store approximately two to three times per month.[5]

The primary duty of HomeBanc's Loan Officers is to originate residential mortgage loans.  Each Loan Officer is assigned to one of HomeBanc's twenty-two Stores and reports to an on-site Store/Sales Manager.[6]  The Store/Sales Manager is responsible for overseeing the Store's operation and administration with the discretion to develop and implement policies, practices, and procedures for the Store; act as a liaison with HomeBanc corporate headquarters, an Area Manager, and other Stores; develop the curriculum for and oversee the ongoing training of Store sales personnel; and supervise Loan Officers assigned to the Store.  At some HomeBanc Stores, the Store/Sales Manager also has responsibility for originating residential mortgage loans.[7]

HomeBanc's Loan Officers are exempt from the FLSA's overtime requirement. The Loan Officers in each Store and each Region have considerable flexibility in setting their working hours and location of work, as well as scheduling the tasks they perform during the workday.[8]  Loan Officers are responsible for originating their own sales by contacting prospective clients, developing and maintaining referral sources, and meeting with clients in person to sell mortgage loan packages.  Loan Officers contact prospects by telephone, mail, and e-mail, as well as in-person.[9]  Loan Officers are encouraged to spend

---

[5] See Ex. A ¶ 10; Ex. B ¶ 12.

[6] See Ex. A ¶ 6; Ex. B ¶ 11; Ex. C ¶ 8.

[7] See Ex. A ¶ 7; Ex. B ¶ 9.

[8] See Ex. C ¶ 9.

[9] See Ex. C ¶ 10.

a significant amount of time in the field performing their principal duty of originating loans, including meeting with clients and prospective clients at locations other than HomeBanc's Stores, RMAs, and BSGs — *e.g.*, clients' homes and offices, non-alliance residential build sites, restaurants, golf courses, non-alliance real estate agencies and brokers, and financial advisors' offices — to develop borrower leads.[10]  Loan Officers engage in marketing and promotional activities in support of their own sales.[11]  Loan Officers are also responsible for blueprinting their loans, which includes consulting with the clients to determine the loan products best-suited to their borrowing needs (*e.g.*, credit score, property type, length of anticipated residency, and amount of down payment). Once a loan is blueprinted, Loan Officers turn over the client's file to a Customer Service Specialist for processing.[12]  Loan Officers who average $25,000,000 in annual loan volume are eligible for a Sales Assistant, who reports directly to the Loan Officer and the Store's Store/Sales Manager, to assist in loan origination efforts.[13]  Aside from Emily Drews, none of the Plaintiffs has or had a Sales Assistant.[14]

HomeBanc hires its Loan Officers regionally.  Each Store/Sales Manager has discretion on which and how many Loan Officers to hire based on general budgeting and hiring estimates provided by HomeBanc's corporate office.  The Store/Sales Manager has discretion to deviate from these estimates depending on his or her assessment of the Store's capacity and projected business needs.[15]

---

[10] See Ex. C ¶ 11.
[11] See Ex. C ¶ 12.
[12] See Ex. C ¶ 13.
[13] See Ex. C ¶ 14.
[14] See Ex. C ¶ 15.
[15] See Ex. A ¶ 21; Ex. B ¶ 23.

Upon being hired, HomeBanc Loan Officers with little or no previous mortgage industry experience must participate in a nine-week Professional Sales Development ("PSD") training program, which includes seven weeks of in-class training at HomeBanc corporate headquarters in Atlanta and two weeks of in-the-field training at the HomeBanc Store to which the Loan Officer will be assigned following PSD-graduation.[16] [Experienced Loan Officers (*i.e.*, those with at least two years' industry experience and an annual production of over $12,000,000) are exempted from PSD.[17]]  All of the Plaintiffs [except Lucian Robinson and Emily Drews] attended PSD training.[18] Following Loan Officers' graduation from PSD, their training and mentoring continues at the Store to which they are assigned.  The Store/Sales Manager is responsible for overseeing this training and mentoring.[19]  During inexperienced Loan Officers' first six months with HomeBanc, they receive a non-recoverable draw (or salary) that exceeds $455 per week, which includes the nine-weeks during which they participate in the PSD training program.  All of the Plaintiffs received this non-recoverable draw.[20]

Although HomeBanc provides policies, practices, and procedures for the operation and administration of individual Stores, HomeBanc authorizes its Store/Sales Managers to modify those materials to fit the market in which the Store is located, as well as the Store's operational and business needs.[21]  Each Stores has separate and distinct training, management, and performance methodologies, designed at the Store level,

---

[16] See Ex. A ¶ 22; Ex. B ¶ 24.

[17] See Ex. C ¶ 16.

[18] See Ex. C ¶ 17.

[19] See Ex. A ¶ 23; Ex. B ¶ 25.

[20] See Ex. C ¶ 18.

[21] See Ex. A ¶ 12; Ex. B ¶ 13.

tailored to their markets, Loan Officer rosters, and business needs.[22]  Stores differ in size, length of time in the market, volume of originated loans, Loan Officer assignments, the number and size of BSG and RMA affiliations, experience level of Loan Officers assigned to the Store, and market strategy.[23]

Since February 21, 2006, three current and eleven former HomeBanc Loan Officers have brought putative FLSA collective actions against HomeBanc and Defendant Flood in the Middle and Southern Districts of Florida.  Plaintiffs' Motion for conditional collective action certification seeks Court-supervised notification of every Loan Officer who has worked at HomeBanc since February 21, 2003 in any of the Company's twenty-two Stores (throughout Florida, Georgia, and North Carolina) regardless of their tenure with the Company, experience-level, loan production volume, duties, responsibilities, or compensation.[24]

## II.   ARGUMENT AND CITATION OF AUTHORITY

"The decision to create an opt-in class under § 216(b)…remains soundly within the discretion of the district court."[25]  Although the standard at the conditional certification stage is "fairly lenient," "[c]ourts, as well as practicing attorneys, have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation."[26]  Accordingly, conditional certification must "be exercised with discretion and only in

---

[22] See Ex. A ¶¶ 24, 25, 26, 27, 28, 29, 30, 31; Ex. B ¶¶ 22, 71, 72, 73, 74, 75.

[23] See Ex. A ¶¶ 5, 14, 16, 17, 18, 31; Ex. B ¶¶ 7, 15, 17, 18, 19, 74.

[24] Pl. Motion at 2.

[25] Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001); see also Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169 (1989) (district courts have discretionary authority to authorize the sending of notice to potential class members in a FLSA collective action); 29 U.S.C. § 216(b).

[26] Holt v. Rite Aid Corp., 333 F. Supp. 2d 1265, 1274-75 (M.D. Ala. 2004) (quotation omitted).

appropriate cases."[27]  Conditional certification and Court-authorized notice are only

appropriate if the **plaintiff** demonstrates that: (A) there are other employees who desire to

opt-in to the litigation and (B) the employees who desire to opt in are similarly situated to

the named plaintiffs.[28]  Plaintiffs fail to establish either element.  As a result, their Motion

should be denied in its entirety.

> **A.      Plaintiffs Fail To Demonstrate There Are Other Employees Who Desire To Opt-In To This Litigation.**

To satisfy the first required prong of their conditional collective action showing,

Plaintiffs must demonstrate that others desire to opt-in to the litigation.[29]  Conditional

certification and the accompanying notice to potential class members are not the

appropriate vehicle for determining **whether** there are others who desire to join a lawsuit

pursuant to the FLSA.[30]  Plaintiffs "have the burden of demonstrating a reasonable basis

for crediting their assertions that aggrieved individuals exist[ ] in the broad class that they

propose[ ]."[31]

Plaintiffs' purported "familiar[ity]" with unidentified "other similarly situated

loan officers who are interested in joining this litigation" should not suffice.[32]  "A

plaintiff's or counsel's belief in the existence of other employees who desire to opt in and

---

[27] See Haynes v. Singer Co. Inc., 696 F.2d 884, 886 (11th Cir. 1983).

[28] Dybach v. Fla. Dep't of Corrs., 942 F.2d 1562, 1567-68 (11th Cir. 1991).

[29] See Mackenzie v. Kindred Hosps. E., LLC, 276 F.Supp.2d 1211, 1220 (M.D. Fla. 2003) (citing Dybach, 942 F.2d at 1567-68).

[30] See Mackenzie, 276 F. Supp. 2d at 1220.

[31] Haynes, 696 F.2d at 886-87.

[32] See Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T-27MSS, 2006 WL 752831, at *3 (M.D. Fla. Mar. 23, 2006) (denying conditional certification and noting that the declarations submitted in support of conditional certification failed to identify any specific employees who desired to opt in to the litigation).

unsupported expectations that additional plaintiffs will subsequently come forward are insufficient to justify certification of collective action and notice to a potential class."[33]

Plaintiffs' reliance on their own individually filed lawsuits (and the one "Consent to Become a Party Plaintiff" by Seta King) is equally unavailing.  If anything, Plaintiffs' lawsuits demonstrate the lack of opt-in interest among current and former HomeBanc Loan Officers.  For over ten months, Plaintiffs have sought to recruit other Loan Officers to pursue FLSA lawsuits against HomeBanc.  This reach has extended throughout Southern Florida,[34] including within HomeBanc's Naples / Fort Myers and North Broward Stores.[35]  Despite their prolonged efforts, geographic reach, and unique access to HomeBanc employees, though, Plaintiffs' campaign has only yielded sixteen Loan Officer Plaintiffs, including the two Southern District of Florida actions (Donahue and Geisler) that Plaintiffs' counsel settled in February 2005.[36]  This represents only 2 % of the approximately 694 current and former Loan Officers employed at HomeBanc since February 21, 2003.  Moreover, thirteen of the fourteen non-Plaintiff Loan Officers currently employed at the Naples / Fort Myers Store (i.e., the subject store of the Middle District of Florida actions) and eighteen of the thirty-seven Loan Officers currently

---

[33] Id. at *3 (quoting Mackenzie, 276 F. Supp. 2d at 1220).

[34] The Plaintiffs reside in **Lee County** (King, Mellman, Marchand, Rodriguez, Gottlieb, and Robinson), **Broward County** (Tyler, Drews, Sepanski, and Gentinetta), **Palm Beach County** (Finneran), and **Collier County** (the Rudolphs).  See King, Doc. No. 1 ¶ 8; Mellman, Doc. No. 1 ¶ 8; Marchard, Doc. No. 1 ¶ 8; Rodriguez, Doc. No. 1 ¶ 8; Gottlieb, Doc. No. 1 ¶ 8; Robinson, Doc. No. 1 ¶ 8; Tyler, Doc. No. 1 ¶ 8; Drews, Doc. No. 1 ¶ 8; Sepanski, Doc. No. 1 ¶ 8; Gentinetta, Doc. No. 1 ¶ 8; Rudolph, Doc. No. 1 ¶ 8.

[35] At the time of their Complaints' filing, four of the named Plaintiffs (King, Mellman, Marchand, and Robinson) still worked at the Naples / Fort Myers Store, and one of the named Plaintiffs (Finneran) still worked at the North Broward Store.

[36] See Geisler v. HomeBanc Mortgage Corp., Steve Walsh, and Patrick S. Flood, U.S.D.C., S.D. Fla., Civil Action File No. 05-cv-61202; Donahue v. HomeBanc Mortgage Corp., Steve Walsh, and Patrick S. Flood, U.S.D.C., S.D. Fla., Civil Action File No. 05-cv-80697.

employed at the North Broward Store (*i.e.*, the subject store of the Southern District of Florida actions) recently executed affidavits affirming they "have been treated fairly by HomeBanc and Defendant Flood and have been compensated appropriately" and "have not joined, and have no intention of joining, in the Collective Actions."[37]

Given the low participation in the putative collective actions, the overwhelming disinterest by Naples / Fort Myers and North Broward Loan Officers in joining the litigation, the sophistication of the putative collective action class members involved (*i.e.*, educated salespersons earning up to $571,897.69 per year[38]), and the general awareness of FLSA lawsuits in the mortgage industry,[39] it is unlikely Plaintiffs will attract other similarly situated Loan Officers to join this litigation.[40]  Plaintiffs should therefore not be permitted to misuse the FLSA's notice provisions to troll for other putative class members at HomeBanc's other Stores in Florida, Georgia, or North Carolina because, as discussed more fully below, the Loan Officers at those Stores are not similarly situated to the Plaintiffs.

---

[37] See Affidavits of North Broward and Naples / Fort Myers Store Loan Officers, appended as Exhibit D.

[38] See Ex. C ¶ 20.

[39] See Ex. C ¶ 21.

[40] See Hargrove v. Sykes Enters., Inc., No. CIV 99-110-HA, 1999 WL 1279651, at *4 (D. Or. June 30, 1999) (denying conditional certification based on lack of opt-in interest where fewer than 7 of 332 former employees, **or approximately 2%**, alleged FLSA violations); compare Sperling, 493 U.S. at 165 (relying on more than 400 filed consents among the 600 solicited).  See also Rodgers, 2006 WL 752831, at *4 (denying conditional certification because, *inter alia*, the defendant submitted supporting affidavits from thirty-one current employees (as compared to three affidavits submitted by the plaintiff) from the three stores at which the plaintiff and his affiants worked).

### B. Plaintiffs Fail To Demonstrate They Are Similarly Situated To Any Other HomeBanc Loan Officers.

In determining whether putative class members are similarly situated, the Court should consider a variety of factors, including:

> "(1) whether the plaintiffs all held the same job title; (2) whether they worked in the same geographic location; (3) whether the alleged violations occurred during the same time period; (4) whether the plaintiffs were subjected to the same policies and practices…; and (5) the extent to which the actions which constitute the violations claimed by plaintiffs are similar."[41]

Plaintiffs bear the burden of establishing that they and the class they wish to represent are similarly situated.[42]

Plaintiffs attempt to establish commonality by summarily contending they are similarly situated to every current and former Loan Officer at HomeBanc.  Plaintiffs base their claim on HomeBanc's purportedly uniform policy of "classify[ing] loan officers as exempt," "requir[ing] loan officers to work long days and weekends without pay for overtime", and requiring Loan Officers to perform "floor coverage" at RMAs and BSGs.

As the Affidavits of Robert Wills, Nigel Fullick, and Paul Lopez demonstrate, however, there is no uniformity in training curriculum, RMA and BSG assignments,

---

[41] Smith v. Tradesmen Int'l, Inc., 289 F. Supp. 2d 1369, 1372 (S.D. Fla. 2003) (quotations omitted).

[42] See Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996); see also Holt, 333 F. Supp. 2d at 1270 ("[A]lthough the Eleventh Circuit has made it clear that in this circuit a plaintiff may establish that others are 'similarly situated' without pointing to a particular plan or policy, a plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond mere facts of job duties and pay provisions.  Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse.") (internal citations omitted) ; Reed v. Mobile County Sch. Sys., 246 F. Supp. 2d 1227, 1232 (S.D. Ala. 2003) ("The burden is on the plaintiffs to make an evidentiary showing that they and the proposed class are similarly situated, not on the defendants to disprove such similarity.").

Store budgeting, supervision of Loan Officers, and the Loan Officers' duties and

responsibilities because HomeBanc's Stores are operationally distinct entities.  These

differences will be important in analyzing, among other things, the applicability of the

Outside Sales Employee exemption to the FLSA overtime requirement, which requires a

showing that:

- A qualified employee's primary duty is making sales[43] or obtaining orders or contracts for services or for the use of facilities for which consideration will be paid by the client or customer; and

- The qualified employee is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.[44]

Importantly, on March 31, 2006, the Department of Labor issued an Opinion Letter

specifically concluding that "'sales force' mortgage loan officers" qualify as exempt

Outside Sales Employees where, as here, they are "'customarily and regularly' engaged

away from the employer's place of business and offices in their homes", even though the

"'sales force' loan officers [may] spend some time in their employer's office taking loan

---

[43] "Sales … include the transfer of title to tangible property… '[S]ale or 'sell' includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 C.F.R. § 541.501(b).

[44] See id. at 541.500(a).

applications, attending meetings, completing paperwork, and preparing marketing and sales materials in support of their own sales efforts."[45]

To confirm the application of this exemption, the Court will need to evaluate each Loan Officer "on an individual basis to determine whether he or she qualifies for [this] exemption."[46] For example, less experienced Loan Officers must devote more of their time and efforts outside the office in prospecting for and developing business relationships with real estate agents, developers, and other referral sources.[47] RMAs and BSGs are generally shared by a number of Loan Officers at a Store, and they decide amongst themselves who will be at the RMA or BSG during designated periods of time.[48] RMA and BSG assignments generally involve different time demands and Loan Officer skill sets as well. A higher representation of RMAs or BSGs at a Store will, as a result,

---

[45] Opinion Letter, FLSA 2006-11 at *3 (DOL WAGE-HOUR March 31, 2006) (appended as Exhibit E); see also Olivo v. GMAC Mortgage Corp., 374 F. Supp. 2d 545, 550-51 (E.D. Mich. 2004) (loan officers are exempt Outside Sales Employees because they worked "primarily outside of the office to solicit prospective borrowers and referral services", devoted their time "at the office … to following up on contacts and leads generated during outside sales visits", had employment agreements stating they were "joining a 'sales force'", were paid commissions based solely on their individual production, participated in employer-sponsored sales incentive programs, were primarily required to solicit new business, and had considerable flexibility in configuring their workday).

[46] Opinion Letter, FLSA 2006-11 at *3.

[47] See Ex. A ¶ 19; Ex. B ¶ 20. Plaintiffs contend that "identical descriptions and requirements listed for the positions of loan officer for each region posted on HomeBanc's website" show "loan officers have similar job duties in each region." Pl. Motion at 5, Pl. Ex. C. The "descriptions" on which Plaintiffs rely, however, are job **postings** for **experienced** Loan Officers. The postings do not detail the Loan Officer position's duties and responsibilities, but rather, promote HomeBanc as a potential employer, explain the hiring process, and list the required criteria for selection as an experienced Loan Officer — i.e., "minimum of two years in the industry with an annual production of over $12 million." If anything, the job postings further reinforce the dissimilarity in Loan Officers based on their experience, training, and loan production volume.

[48] See Ex. C ¶ 22.

affect the Loan Officers' duties and responsibilities.  BSGs generally provide Loan Officers with a captive market (*i.e.*, HomeBanc is the only residential mortgage lender on-site during designated periods of time), last only a few months (*i.e.*, until the development has been sold), and result in lower commissions on a higher volume of loans.  RMAs, on the other hand, generally are longer, ongoing assignments in which competitor residential mortgage lenders are prohibited from entering the RMA agency and must solicit the agency's business through outside channels.[49]

The date of hire will be a Loan Officer-specific factor affecting the applicability of the Administrative Employee exemption to the FLSA overtime requirement, which requires a showing that a qualified employee:

- Earn a salary of at least $455 per week; and

- Have a primary duty of performing office or nonmanual work directly related to the management or general business operations of the employer or the employer's customers, including exercising discretion and independent judgment with respect to matters of significance.[50]

Before 2006, compensation for all HomeBanc Loan Officers after the first six months was exclusively commission based with Loan Officers receiving a recoverable draw against those commissions.  Beginning in January 2006, HomeBanc instituted its "BasePlus" compensation plan for newly hired Loan Officers.  Under this plan, new Loan Officers receive a non-recoverable draw ranging from $2,500 to $4,500 per month (as determined by the Store/Sales Manager) (well in excess of the Administrative Employee exemption's minimum salary requirement) plus any commissions earned that exceed their monthly draw.  The payments now continue beyond the initial six month period of a new

---

[49] See Ex. A ¶ 20; Ex. B ¶ 21.

[50] See 29 C.F.R. § 541.200(a).

Loan Officer's employment at HomeBanc.  Additionally, BasePlus Loan Officers are eligible for enhanced commissions during the first seven months after completing PSD—*i.e.*, 0.90% on loans closed in the first four months, and 0.70% on loans closed in the following three months.  Loan Officers hired before January 2006, on the other hand, are generally ineligible to participate in the BasePlus program, and their compensation continues to be exclusively commission-based.[51]

Plaintiffs contend that differences in "(i) rate of pay, (ii) supervisor, or (iii) number of overtime hours, does not in anyway affect the similarity of their positions."[52] Plaintiffs' support for this contention are cases decided under the Age Discrimination in Employment Act of 1967 ("ADEA").[53]  ADEA collective actions are, however, fundamentally different from those brought under the FLSA because:

> a discrimination case focuses on whether the defendant had a policy of discriminating against its employees, therefore, a primary showing of discrimination is common to all potential claimants, making them similarly situated.  The focus [in FLSA misclassification cases], however, is on the distinction between an exempt and non-exempt employee. Unlike in a discrimination case, the focus is not on [the defendant's] actions, but instead on the nature of the employees' job duties in the context of the relevant exemption criteria.[54]

---

[51] See Ex. A ¶ 48.  In their Motion, Plaintiffs assert that HomeBanc's implementation of the BasePlus program "created a new sales position, mortgage consultant, which is similar to the position of loan officer with the exclusion of staffing HomeBanc's alliance offices."  Pl. Motion at 4.  As discussed above, "mortgage consultant" is another moniker for the Loan Officer position.

[52] Pl. Motion at 10.

[53] See, e.g., Church v. Consol. Freightways, Inc., 137 F.R.D. 294 (N.D. Cal. 1991) and Heagney v. European Am. Bank, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)).

[54] Morisky v. Pub. Serv. Elec. & Gas Co., 111 F. Supp. 2d 493, 498 (D.N.J. 2000).

Thus, differences in "(i) rate of pay, (ii) supervisor, or (iii) number of overtime hours" are, in fact, essential to the Court's determination of whether there are other similarly situated putative class members.

In confirming the eligibility of HomeBanc's Loan Officers for the Administrative and/or Outside Sales Employee exemptions, the Court will have to evaluate each Loan Officer based on the Store at which they work, the Store/Sales Manager to whom they report, their previous industry experience, their loan production volume, whether they are eligible for BasePlus, and whether they are engaged primarily in outside sales. It would therefore be unnecessarily inefficient to litigate these cases as a collective action because "[t]he exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee-by-employee basis."[55] The fact-specific nature of each Loan Officer's exemption status makes conditional

---

[55] Morisky, 111 F. Supp. 2d at 499; see also Pfaahler v. Consultants for Architects, Inc., No. 99C6700, 2000 WL 198888, at *2 (N.D. Ill. Feb. 8, 2000) (certification of § 216(b) collective action inappropriate because fact-intensive inquiry of each potential plaintiff would be required to determine whether he was an exempt independent contractor).

certification of **any** putative collective action class inappropriate here.[56]  Accordingly,

Plaintiffs' Motion should be denied in its entirety.

> C.    **Plaintiffs' Proposed Conditional Class Is Impermissibly Overbroad**.

Alternatively, if the Court concludes that some form of a conditional class is

appropriate, which Defendants continue to deny, the Court should conditionally certify

two **separate** putative classes limited to Loan Officers who, at some time since February

21, 2004, worked at (1) the Naples / Fort Myers Store or (2) the North Broward Store,

---

[56] See Holt, 333 F. Supp. 2d at 1274-75 (declining to conditionally certify class of store managers and assistant store managers (on a nationwide or regional basis) because the plaintiffs failed to establish the existence of similarly situated others with respect to their job requirements); Scholtisek v. Eldre Corp., 229 F.R.D. 381, 389 (W.D.N.Y. 2005) (in cases where the plaintiffs seek unpaid overtime because they were allegedly misclassified as exempt, "the purported class members' job duties, and any dissimilarities among them, will often be relevant to whether the employees are similarly situated for purposes of the FLSA, insofar as their job duties relate to whether they were correctly classified as exempt from the FLSA's overtime requirements."); Mike v. Safeco Ins. Co., 274 F. Supp. 2d 216, 220-21 (D. Conn. 2003) (denying conditional certification because a determination of defendant's liability under the FLSA for allegedly improperly classifying employees as exempt would be based upon the tasks the employee performed on a day-to-day basis and this would be specific to the individual); Clausman v. Nortel Networks, Inc., No. IP02-0400, 2003 WL 21314065, at *4-5 (S.D. Ind. May 1, 2003) (declining to conditionally certify a class because the individual nature of the Outside Sales Employee exemption requires a separate factual inquiry into each plaintiff's work situation).

which are the two Stores where the named Plaintiffs worked as Loan Officers.[57]

Plaintiffs' proposed Company-wide class ignores the restriction of the named Plaintiffs to

those two Stores, as well as the pervasive dissimilarities between Plaintiffs even at these

two Stores, let alone as compared to Loan Officers employed at HomeBanc's other Stores

in Florida, Georgia, and North Carolina.  Plaintiff have also failed to demonstrate any

willfulness in HomeBanc's conduct even arguably warranting an extended three year

notice period.

      Plaintiffs' summary claim of being similarly situated to every other Loan Officer

at HomeBanc does not come close to satisfying their required showing.[58]  Defendants

---

[57] See, e.g., Stubbs v. McDonald's Corp., 227 F.R.D. 661, 666 (D. Kan. 2004) (plaintiff's "own speculative allegations" were insufficient to sustain his burden to prove that he and the putative class members were similarly situated where defendant's supporting affidavits were specific and detailed); Grayson, 79 F.3d at 1097; Horne v. United Servs. Auto. Ass'n, 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003) (appraisers outside of the plaintiff's work location were not similarly situated); White v. Osmose, Inc., 204 F.Supp.2d 1309, 1318 (M.D. Ala. 2002) (conditionally certifying nationwide class would not "partake of the economy of scale envisioned by the FLSA collective action procedure" where the only affidavits submitted in support of conditional certification were from employees in Alabama); Harper v. Lovett's Buffet, Inc., 185 F.R.D. 358, 362 (M.D. Ala. 1999) (denying conditional certification of a nationwide class where the 15 affidavits and 21 consents to opt in were limited to a single work location); Tucker v. Labor Leasing, Inc., 872 F. Supp. 941, 948 (M.D. Fla. 1994) (plaintiffs failed to show that employees working at truck terminals other than the terminal where the named plaintiffs worked were similarly situated).

[58] See Grayson, 79 F.3d at 1097 (to meet the burdens necessary for conditional certification, a plaintiff must provide "detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary'") (citation omitted); Clark v. Dollar Gen. Corp., No. 3:00-0729, 2001 WL 878887, at *5-6 (M.D. Tenn. May 23, 2001) ("The Court cannot [ ] on the basis of the evidence presented, find all assistant managers in Defendant's 4,800 stores nationwide to be 'similarly situated' to the two named, individual Plaintiffs and six 'opt-in' Plaintiffs or allow certification or provision of notice to such a huge, diverse class.") (internal citations omitted); McQuay v. Am. Int'l Group, Inc., No. 4:01CV00661-WRW, 2002 WL 31475212, at *3 (E.D. Ark. Oct. 25, 2002) ("plaintiffs['] affidavits demonstrate knowledge limited to the Little Rock, Arkansas, center and do not establish that employees with the same job titles at other locations in the 29 states are similarly situated.").

have provided detailed affidavits demonstrating that its Stores are operationally distinct

entities with unique training curricula, Store budgeting, supervision of Loan Officers, and

Loan Officer duties and responsibilities.  Indeed, even some of the cases cited by

Plaintiffs support conditional certification here, if at all, only as to two discrete

conditionally certified classes of Loan Officers since February 21, 2004 at the

Naples / Fort Myers and North Broward Stores.[59]

## III.   CONCLUSION

For the foregoing reasons, Defendants urge this Court to deny Plaintiffs' Motion

for Conditional Class Certification and Court-Supervised Notification.[60]

Respectfully submitted this 25th day of May, 2006.

*/s/ Ryan Scott Ferber*
Georgia Bar No. 170550
Ryan Scott Ferber*
Georgia Bar No. 142082
Amanda C. Kunz*
Georgia Bar No. 142177
*(*Admitted Pro Hac Vice in King, Mellman,*
*Marchand, and Rodriguez.  Motions for*
*Admission Pro Hac Vice forthcoming in*
*Rudolph, Gottlieb, and Robinson)*

KING & SPALDING LLP
1180 Peachtree Street N.E.

---

[59] See, e.g., McQuay, 2002 WL 31475212, at *3 (limiting conditional certification to claims adjusters in Arkansas and Oklahoma where the plaintiffs failed to establish that employees with the same job title outside of those locations were similarly situated); Clark, 2001 WL 878887, at *5-6 (declining to conditionally certify nationwide class because, *inter alia*, the class the plaintiffs sought to represent contained "individual employees who have worked at different stores, in different states, for different store, district, and regional managers, and most likely, in different working conditions" and instead authorizing conditional certification and notice to current and former assistant sales managers in the districts in which the affiants were employed).

[60] If the Court nonetheless decides to conditionally certify any putative class in this case, which Defendants strongly oppose, Defendants have a number of substantial objections to Plaintiffs' proposed Notice and Order and therefore respectfully reserve the right to respond to it, if necessary, at such time as the Court directs.

Atlanta, Georgia 30309-3521
(404) 572-4600 (telephone)
(404) 572-5135 (facsimile)
bclineburg@kslaw.com
sferber@kslaw.com
akunz@kslaw.com

Denise L. Wheeler
Florida Bar No. 0017809

FOWLER WHITE BOGGS BANKER
2201 Second Street 5th Floor
Fort Myers, Florida 33901
(239) 334-7892 (telephone)
(239) 334-3240 (facsimile)
dwheeler@fowlerwhite.com

ATTORNEYS FOR DEFENDANTS
HOMEBANC MORTGAGE
CORPORATION and PATRICK S. FLOOD

20

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION**

| | |
|---|---|
| **BRADFORD T. KING,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>       **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>       **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-CV-00096-VMC-SPC** |
| **MARK MELLMAN,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>       **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>       **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-cv-00097-VMC-DNF** |

**CARY MARCHARD,**
**On behalf of himself and all others**
**similarly situated,**

       **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

       **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00112-JES-DNF**

---

**ROBERT RODRIGUEZ,**
**On behalf of himself and all others**
**similarly situated,**

       **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

       **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00135-VMC-DNF**

---

**JOHN S. RUDOLPH and AMANDA L.**
**RUDOLPH, on behalf of themselves and**
**all others similarly situated,**

       **Plaintiff,**

**v.**

**HOMEBANC MORTGAGE**
**CORPORATION, a foreign corporation,**
**and PATRICK S. FLOOD,**

       **Defendants.**

**CIVIL ACTION NO.**
**2:06-cv-00196-VMC-SPC**

|  |  |
|---|---|
| **MICHAEL B. GOTTLIEB,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>      **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-cv-00197-JES-DNF** |
| **LUCIAN ROBINSON,**<br>**On behalf of himself and all others**<br>**similarly situated,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE**<br>**CORPORATION, a foreign corporation,**<br>**and PATRICK S. FLOOD,**<br><br>      **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-cv-00203-JES-SPC** |

## CERTIFICATE OF SERVICE

I hereby certify that on May 25th, 2006, I electronically filed **DEFENDANTS HOMEBANC MORTGAGE CORPORATION AND PATRICK S. FLOOD'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR COLLECTIVE ACTION CERTIFICATION PURSUANT TO 29 U.S.C. § 216(b) AND COURT SUPERVISED NOTIFICATION OF PUTATIVE PLAINTIFFS** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

        E. Nannette Piccolo
        Marshall A. Adams

Marshall A. Adams, P.A.
One East Broward Blvd., Suite 1410
Fort Lauderdale, Florida 33301

*/s/ Ryan Scott Ferber*
Georgia Bar No. 170550