IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

| | |
|---|---|
| BRADFORD T. KING,<br>On behalf of himself and all others<br>similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>HOMEBANC MORTGAGE<br>CORPORATION, a foreign corporation,<br>and PATRICK S. FLOOD,<br><br>      Defendants. | CIVIL ACTION NO.<br>2:06-CV-00096-VMC-SPC |

**DEFENDANTS' AMENDED RESPONSE TO PLAINTIFF BRADFORD
T. KING'S AMENDED AND SUPPLEMENTAL MOTION
TO RESTRAIN, OR IN THE ALTERNATIVE LIMIT,
DEFENDANTS' EX-PARTE COMMUNICATIONS
WITH PUTATIVE CLASS MEMBERS THROUGHOUT
<u>TRIAL AND TO ISSUE CORRECTIVE NOTICE</u>**

**I.    <u>PROCEDURAL AND FACTUAL BACKGROUND</u>**

    **A.**    *Procedural Posture of This Case*

Plaintiff Bradford T. King, a Loan Officer employed at HomeBanc's Naples/ Ft. Myers store, initiated this dispute by filing a Complaint on behalf of himself and other current and former Loan Officers alleging that he and the putative class members had been misclassified as overtime-exempt employees under the FLSA. King was subsequently joined by seven fellow loan officers who filed six similar lawsuits in this

1

Court,[1] as well as five additional loan officers from the North Broward, Florida store who filed in the Southern District of Florida.[2]

On May 4, 2006, Defendants filed a Motion to Consolidate the seven cases pending in this Court,[3] as well as a Motion to Consolidate the five Southern District cases in that Court.[4] On the same day, Plaintiffs filed a Motion to Consolidate all twelve cases in this Court.[5] Prior to any rulings on the Motions to Consolidate, Plaintiffs filed a Motion to Conditionally Certify all of the cases as one collective action in this Court.[6]

---

[1] Mellman v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00097-VMC-DNF, filed February 21, 2006; Marchand v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00112-JES-DNF, filed March 6, 2006; Rodriguez v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00135-VMC-DNF, filed March 15, 2006; Rudolph et al. v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00196-VMC-SPC, filed April 12, 2006; Gottlieb v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00197-JES-DNF, filed April 12, 2006; Robinson v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 2:06-cv-00203-JES-SPC, filed April 19, 2006.

[2] Tyler v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 0:06-cv-60332-DTKH, filed in the United States District Court for the Southern District of Florida on March 16, 2006; Finneran v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 0:06-cv-80386-JCP, filed in the United States District Court for the Southern District of Florida on April 17, 2006; Drews v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. No. 0:06-cv-60596-JIC, filed in the United States District Court for the Southern District of Florida on May 1, 2006; Sepanski v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 0:06-cv-60597-WPD, filed in the United States District Court for the Southern District of Florida on May 1, 2006; Gentinetta v. HomeBanc Mortgage Corp. and Patrick S. Flood, Civil Action No. 0:06-cv-60597-UUB, filed in the United States District Court for the Southern District of Florida on May 1, 2006.

[3] King, Doc. No. 19.

[4] Tyler, Doc. No. 12.

[5] King, Doc. No. 20.

[6] King, Doc. No. 23.

Thereafter, Plaintiffs filed this Motion seeking to prohibit Defendants from communicating with its employees. All of the parties' motions are now pending.

### B. *Facts Relevant to Plaintiffs' Motion*

The facts upon which Plaintiffs base their Motion are not "compelling," as they contend, except in the sense that they compellingly show HomeBanc has done nothing improper. As an initial matter, a number of the Motion's factual allegations are unsupported by <u>any</u> *signed* affidavit, and therefore are devoid of any record support. Second, many of the putative "facts" relied upon in the Motion are simply false, or taken so far out of context as to be patently misleading. As indicated by the affidavit testimony of HomeBanc's employees (attached in the Appendix to this Response), the apparent reason for Plaintiffs' Motion is their frustration with the lack of interest among HomeBanc loan officers in joining their lawsuits ("Lawsuits").[7]

Contrary to Plaintiffs' incomplete or misleading assertions, the real facts are as follows:

- Kevin Finneran's employment was terminated by HomeBanc for job abandonment on May 12, 2006 after Finneran failed to report to work without notice for *three weeks*, failed to report for a standard, required, quarterly performance review, and refused to respond to two certified letters asking him to explain his absences (Affidavit of Bill Mei ("Mei Aff.") ¶¶ 8-9, attached hereto as Exhibit A);

- Brad King's vacation request was initially denied (but ultimately was granted) despite (1) his having insufficient accrued vacation time to take the trip, (2) his request for vacation being untimely under HomeBanc's

---

[7] As of the date of this filing, 13 of the 14 non-plaintiffs in HomeBanc's Naples / Ft. Myers store have signed affidavits that state they do not intend to opt-in to Plaintiffs' Lawsuits even if they are certified. In HomeBanc's North Broward store, 18 of the 37 non-plaintiffs have executed similar affidavits.

3

policy; (3) his giving an incomplete and misleading explanation about the reasons for taking vacation, given the fact that he used the time to play catcher for the Long Island Ducks, a minor league baseball team (while still employed by HomeBanc); and (4) his failing to return from his "vacation" once it expired (Affidavit of Nigel Fullick ("Fullick Aff.") ¶¶ 16-18, attached hereto as Exhibit B);

- Lucian Robinson *voluntarily* resigned his employment with HomeBanc on May 18, 2006, but was immediately asked by Tom Flood if there was anything HomeBanc could do to convince him to remain an employee (Affidavit of Thomas Flood ("Flood Aff.") ¶¶ 9-11, attached hereto as Exhibit C);

- Mark Mellman was relieved of his duties supporting AmeriVest, a business partner of HomeBanc, after AmeriVest and Mellman's co-workers (including Lucian Robinson, a co-plaintiff) criticized Mellman's performance, described his product and industry knowledge as "very weak", and expressed concern that he did not present a professional appearance while working in AmeriVest's offices (Fullick Aff. ¶¶ 11-12);

- Thomas Flood conducted a routine, regularly scheduled business meeting at HomeBanc's Naples / Ft. Myers store during which he outlined his goals for the Branch and, without referring to the Lawsuits, stated that employees not performing to expectations would be closely managed (Flood Aff. ¶ 6);

- *After* Cary Marchand told Tom Flood that he was having second thoughts about proceeding with his lawsuit against HomeBanc, Flood offered to advance Cary Marchand funds in the event he was having financial difficulties (Flood Aff. ¶14);

- After a number of loan officers had expressed frustration with their colleagues having filed the Lawsuits and when speculation about the Lawsuits had become rampant, Nigel Fullick directed loan officers not to discuss the Lawsuits and not to retaliate against those involved in the Lawsuits (Fullick Aff. ¶¶ 5-7); and

- In addition, at a regularly scheduled meeting at each store, HomeBanc provided the following neutral and factual information concerning the Lawsuits (read verbatim from a prepared statement):

    ➢ Lawsuits have been filed against HomeBanc by Brad King, Mark Mellman, Cary Marchand, Robert Rodriguez, Amanda Rudolph, John S. Rudolph, Michael Gottlieb, Lucian Robinson,

4

> Seta King, Tracy Tyler, Kevin Finneran, Emily Drews, Greg Sepanski, and Aldana Gentinetta.

➢ The plaintiffs are current and former Loan Officers of HomeBanc who are claiming they worked, on average, 60 hours per week and were required to perform "floor coverage" at real estate agencies and builder service groups.

➢ The plaintiffs claim that they and all other Loan Officers at HomeBanc have been misclassified as overtime-exempt employees under the Fair Labor Standards Act of 1938 ("FLSA"), and are therefore entitled to unpaid overtime for all hours worked over forty in each week. The plaintiffs also seek payment for their attorneys' fees in the lawsuits.

➢ The plaintiffs' attorneys have asked the Court to notify you about the lawsuits so they can represent you and make similar claims on your behalf.

➢ HomeBanc denies the allegations in the lawsuits and believes that its compensation of Loan Officers is legal, fair, and generous.

➢ If you do not want to participate in the lawsuits, we ask you to sign an affidavit stating that.

➢ If you want to talk to an attorney or make any changes to the affidavit before signing it, that is fine with us.

➢ Regardless of what you do (whether your sign the affidavit or not or whether you join the lawsuits or not), HomeBanc will not retaliate against you.

➢ For those interested in signing an affidavit, please see [a HomeBanc Manager] after the meeting. (Affidavit of Gerry Teeven ("Teeven Aff.") ¶ 9, attached hereto as Exhibit D; Mei Aff. ¶ 6).

In short, the facts show both that HomeBanc has continued to appropriately manage its employees despite the Lawsuits and that several of the Plaintiffs have performance issues and are, therefore, not similarly situated to the other Loan Officers.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     *Plaintiffs Have not Met the Requirements for Obtaining a Preliminary Injunction*

In their Motion, Plaintiffs effectively seek to enjoin Defendants from communicating with their own employees in a normal business setting. Although they have not said so in their Motion, what they are really seeking is a preliminary injunction. Plaintiffs have not, however, satisfied the well-established standard for obtaining this "extraordinary and drastic remedy."[8] Accordingly, their Motion fails as a matter of law.

In order to obtain injunctive relief, a party must demonstrate that (1) there is a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.[9] Injunctive relief should not be granted unless the movant "'clearly carries the burden of persuasion' as to the four requisites."[10]

Here, Plaintiffs have failed to carry this heavy burden. Indeed, their Motion is devoid of any showing as to *any* of the four factors. This alone bars Plaintiffs' entitlement to the relief they request.[11]

---

[8] United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983).

[9] All Care Nursing Serv., Inc. v. Bethesda Mem. Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).

[10] United States v. Jefferson County, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting Canal Auth. v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974)).

[11] See e.g. Schoenfisch v. Walley, No. 8:00CV337T23B, 2000 WL 33365995, at *2 (M.D. Fla. July 14, 2000) (Merryday, J. adopting the report and recommendation of

6

### B.     *Defendants Have Not Acted Improperly*

Instead of making the showing necessary to obtain the relief they request, Plaintiffs' Motion relies almost entirely on unsupported allegations of "egregious" conduct by Defendants. As demonstrated below, however, Plaintiffs' claim that Defendants have acted improperly is based upon misrepresentations of both the facts and the law. Accordingly, Plaintiffs have not met even the burden of establishing that Defendants' conduct was improper and their Motion should be denied.

#### 1.     *Plaintiffs Have Misrepresented the Facts*

As summarized in Section I.B. above and set forth fully in the Affidavits of Nigel Fullick, Tom Flood, Gerry Teeven and Bill Mei, many of the alleged "retaliatory" acts relied upon by Plaintiffs are nothing more than ordinary, business-related discussions and decisions.  For example, Plaintiffs characterize the termination of Kevin Finneran's employment as retaliatory (Pl.'s Motion at 5).  The facts are that Finneran abandoned his job, failed to come to work for over *three weeks*, failed to attend a mandatory (yet ordinary and regularly scheduled) quarterly performance review, and failed to communicate with HomeBanc regarding his unexcused absence (Mei Aff. ¶¶ 8-9). Plaintiffs' failure to mention and explain the actual reasons for Finneran's departure is telling -- by simply stating that Finneran was fired, Plaintiffs invite the Court to draw an inference of retaliation based upon an incomplete recitation of the facts.

---

Wilson, M.J.) (denying motion to enjoin defendants in a Rule 23 class action from contacting putative class members based on the plaintiffs' failure to address the factors necessary to obtain injunctive relief).

Likewise, Plaintiffs attempt to impute a nefarious motive to HomeBanc from the *voluntary* resignation of Lucian Robinson, another one of the Plaintiffs. Similar to Finneran, Robinson's *signed* affidavit does not state that he resigned because he believes he was retaliated against; it is absolutely silent as to the reasons for his resignation.[12] The same is true of Plaintiff's contention that Robinson was "offered future monetary incentives to retract his resignation and conditioned the monetary incentives on Mr. Robinson dismissing his lawsuit." (Motion at 5, # 7). First, those allegations appear nowhere in Robinson's *signed* affidavit, and are therefore unsupported by the record. Second, as set forth in Flood's Affidavit, Flood's sincere attempts to keep Robinson at HomeBanc (a fact which in itself cuts against Plaintiffs' assertion of retaliatory motive) were not conditioned on Robinson's withdrawing his lawsuit. (Flood Aff. ¶¶ 9-12).

Plaintiffs characterization of Mark Mellman's removal from the AmeriVest RMA is similarly misleading.[13] As set forth in Nigel Fullick's Affidavit, Mellman was removed from that account for performance reasons and because the owner of AmeriVest and Mellman's fellow loan officers (including Plaintiff Robinson) had been critical of

---

[12] Significantly, Plaintiffs attached an *unsigned* draft of Robinson's affidavit to their Motion that purported to state facts supporting a number of their claims. Robinson's *signed* affidavit subsequently filed by Plaintiffs is notably different from the draft, and is devoid of any allegations regarding (1) the removal of Mark Mellman from the AmeriVest account, (2) Tom Flood's offering him "future monetary incentives" conditioned on his dismissal of his lawsuit, and (3) certain statements purportedly made by Fullick and/or Flood during business meetings.

[13] Again, neither Mellman's signed nor unsigned affidavit includes the facts set forth in Plaintiffs' Motion (See Pl.'s Motion, Ex. B). Plaintiffs' representations could not be more bereft of evidentiary support.

8

Mellman's performance (Fullick Aff. ¶¶ 11-12). Joe Ballarino, a principal of AmeriVest, critiqued Mellman's abilities as follows:

> Mark is very strong in building relationships but not always based on a business atmosphere. H[is] product and industry knowledge seems very weak. Appearance is sometimes an issue, specifically neatness of clothes[.] (Fullick Aff. ¶ 11, Ex. A).

Likewise, Mellman's co-workers (especially co-Plaintiff Lucian Robinson) had been critical of Mellman's failure to report to work at AmeriVest when scheduled. (Fullick Aff. ¶ 12, Ex. B). Mellman's removal from the AmeriVest account was, therefore, due to legitimate, non-retaliatory business reasons that have not and cannot been disputed by Plaintiffs.[14]

Finally, Plaintiffs take HomeBanc to task for alleged statements made to its employees by Nigel Fullick, Tom Flood, and Gerry Teeven. First, Plaintiffs contend that Flood said during a meeting that Plaintiffs would be "performance managed out" of the company. That is false. Plaintiffs have twisted comments made by Flood during a normal business meeting and inaccurately linked them to the Lawsuits. During the meeting in question, Flood, who had recently assumed responsibility for the Naples / Ft. Myers store, simply emphasized his business goals, and stated (without any reference to the Lawsuits) that underperformers would be actively managed. This same message is regularly communicated to employees in other stores every day. To restrain HomeBanc

---

[14] As stated above, the majority of Plaintiffs' allegations of retaliation against Mellman rely upon a draft affidavit of Lucian Robinson that was never signed. As discussed herein, Robinson's signed affidavit omits the allegations of retaliatory conduct.

from this sort of normal business discussion would be unwarranted and is patently unreasonable.[15]

With respect to Fullick, a number of the statements attributed to him are false. Fullick did not state that the Plaintiffs are "trying to take HomeBanc down" or the Lawsuits could affect the price of HomeBanc stock.  Fullick did emphasize to employees HomeBanc's policy against publicly discussing <u>any</u> lawsuit involving HomeBanc (not just this one), and did instruct employees that they should not treat those involved in the Lawsuits any differently from those who were not, even if they disapproved of the Lawsuits.  (Fullick Aff. ¶¶ 6-7).  Fullick's comments in context cannot be construed as intimidating or retaliatory.

With misplaced hubris, Plaintiff's also accuse Fullick of "initially den[ying]" a request by Plaintiff Brad King for vacation purportedly because King is a Plaintiff.  As set forth in Fullick's Affidavit, King's vacation request was initially denied because it was untimely and King had insufficient vacation time remaining.  (Fullick Aff. ¶ 16). The irony is that King gave Fullick an incomplete and misleading explanation for the request.  In addition to (1) driving his aunt "up north" (one purported reason for the

---

[15] Plaintiff's attempts to smear Flood as "offering future monetary incentives" for Robinson and/or Cary Marchand to dismiss their lawsuits are also misleading.  First of all, there is nothing in Robinson's signed affidavit supporting these allegations.  As discussed in Flood's affidavit, he offered Robinson an advance against commissions not to dismiss his lawsuit, but in an attempt to retain a valued employee at HomeBanc. (Flood Aff. ¶¶ 11-12).  With respect to Marchand, Flood offered him an advance against commissions based upon Marchand's representation that he wished to withdraw from the lawsuit and Flood believed that Marchand might have financial difficulties related to repayment of legal expenses.  (Flood Aff. ¶ 14).  Were Plaintiffs to obtain the relief they request, once again, no good deed would go unpunished.  Even if the statements occurred as alleged, however, Flood was not prohibited from making what amounts to a settlement offer to any Plaintiff.

vacation request), and (2) taking a family vacation (a second purported reason), it turns out that King had signed a contract with the Long Island Ducks, a minor league baseball team, and has been playing minor league baseball since at least April 20, 2006 -- while still employed by HomeBanc.    (Fullick Aff. ¶ 18).

Finally, Plaintiffs' Motion decries HomeBanc's legitimate communication to its employees regarding the Lawsuits.   But those communications are factual, neutral, and not the least bit retaliatory or intimidating.  After a number of loan officers had expressed anger and frustration with the Lawsuits, and with the "rumor mill" in high gear, managers in HomeBanc's Naples / Ft. Myers and North Broward stores each read from a prepared script that simply described the plaintiffs in the lawsuits, the claims being made, and stated that the Company opposed the plaintiffs' claims.   The verbatim statement set forth in the attached affidavits belies Plaintiffs' mischaracterization.

Nothing in the statements is improper, inaccurate, intimidating, or retaliatory.[16] Plaintiffs' characterization of those statements as improper is more a product of their concern that their claims lack support among HomeBanc's Loan Officers than of any impropriety on the part of HomeBanc.  In summary, Plaintiffs' request for extraordinary,

---

[16] Cary Marchand's allegation that he was encouraged not to attend the meeting where the Lawsuits were discussed is false.  Rather, prior to the meeting, Gerry Teeven (Assistant Branch Manager) contacted Mark Mellman and Cary Marchand to advise them that the Lawsuits would be discussed at the meeting.   Teeven did not want the two to be surprised or made to feel uncomfortable when their claims were discussed.  Teeven did not tell either Mellman or Marchand that they were unwelcome at the meeting or suggest that they not attend; he simply gave them the option not to attend.   Both thanked Teeven for the advance notice.   Marchand ultimately attended the meeting, but Mellman did not. (Teeven Aff. ¶ 8).

11

interim relief is "supported" by affidavits that were never signed and misrepresentations of the actual events and statements.

### 2. *Plaintiffs Have Misrepresented the Law*

More importantly, Plaintiffs have also misrepresented the law. Defendants are legally entitled to communicate with their own employees, even with respect to the Lawsuits. Plaintiffs' contention to the contrary is based almost entirely on cases involving post-certification Rule 23 class actions.[17] But certified Rule 23 class actions differ from FLSA collective actions brought pursuant to 29 U.S.C. § 216(b) in significant ways.

Once a Rule 23 class action is certified, absent class members are considered to be part of the class and represented by class counsel unless and until they choose to "opt out" of the class.[18] Accordingly, defendants must "refrain from discussing the litigation with members of the class as of the date of class certification."[19] On the other hand, putative class members in an FLSA collective action do not become parties unless and until they elect to "opt in" to the class.[20] Until that time, putative class members are not

---

[17] Kleiner v. The First Nat'l Bank of Atlanta, 751 F.2d 1193 (11th Cir. 1985); Abdallah v. The Coca-Cola Co., 186 F.R.D. 672 (N.D. Ga. 1999); Shores v. Publix Supermarkets, Inc., No. 95-1162-CIV-T-25(E), 1996 WL 859985 (M.D. Fla. Nov. 25, 1996) (Adams, J.), vacated by, Shores v. Publix Supermarkets, Inc., No. 95-1162-CIV-T-25E, 1997 WL 714787 (M.D. Fla. Jan. 27, 1997) (Adams, J.); Bower v. The Bunker Hill Co., 689 F. Supp. 1032 (E.D. Wash. 1985).

[18] See Kleiner, 751 F.2d at 1207 n.28 (citation omitted).

[19] Id. at 1207.

[20] 29 U.S.C. § 216(b) ("[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party.").

represented by the named Plaintiffs' attorney so there is no attorney-client relationship that must be protected.

Notably, Plaintiffs fail to cite the one case that appears to have directly addressed this distinction in the context of communications with potential collective action class members. In Parks v. Eastwood Insurance Services., Inc., 235 F. Supp. 2d 1082 (C.D. Cal. 2002), an action to recover overtime wages under the FLSA, the court held that a defendant employer may communicate with prospective plaintiff employees who have not yet opted in to an FLSA collective action.[21] There, the defendant employer had sent its employees a memorandum regarding the lawsuit *after* the court had certified the class and authorized court-supervised notice, but prior to the court's notice being sent.[22] Plaintiffs' counsel then moved "to stop Defendant from communicating with prospective Plaintiffs, and to make Defendant pay for a corrective notice."[23] The Court, noting the distinction between certified classes under Rule 23 and FLSA collective actions under 29 U.S.C. § 216(b), denied plaintiffs' motion.[24] According to the court, "[t]he restrictions on defendant communication with class action or representative action plaintiffs arise from the existence of an attorney-client relationship."[25] Because there was no attorney-

---

[21] 235 F. Supp. 2d at 1082-83.

[22] Id. at 1083.

[23] Id.

[24] Id. at 1084-85.

[25] Id. at 1083.

client relationship at issue with respect to the members of the putative collective action class, the defendant's communications with them were proper.[26]

In the instant case, the circumstances weigh even more heavily in favor of permitting communications. Whereas there was already a certified collective action class in Parks at the time the communications occurred, the Court has yet to even conditionally certify a class in this case. Moreover, the Parks court had already approved court-authorized notice. Here, no notice has been approved. Therefore, Defendants' communications with their employees could not have had the effect of undermining or contradicting any court-approved notice. Finally, as stated above, Defendants' discussions with their employees were not misleading or coercive.[27] To the contrary, Defendants specifically informed their employees of the Lawsuits and their right to join them. Indeed, Defendants emphasized that they would not be retaliated against if they decided to do so. In the event they did not wish to join, Defendants simply requested that the employees voluntarily sign an affidavit memorializing that intent. Just as Plaintiffs had every right to solicit affidavits and consents in order to show there was sufficient

---

[26] Id.

[27] The Parks court reasoned that communications with putative plaintiffs in FLSA collective actions are more analogous to communications with potential members of Rule 23 class actions prior to certification. In pre-certification Rule 23 class actions, communications are generally permitted, and any order prohibiting communications must be supported by a "specific record by showing the moving party of the particular abuses by which it is threatened" and must be "carefully drawn" so as to "limit[ ] speech as little as possible." Gulf Oil Co. v. Bernard, 452 U.S. 89, 101-02 (1981). As stated above, Plaintiffs' allegations lack evidentiary support and are directly contradicted by the affidavits of Bill Mei, Nigel Fullick, Tom Flood, and Gary Teeven. They have thus failed to provide any "specific record…of [ ] particular abuses" justifying a restraint on communications. See id. at 104 n.18 ("We agree with the Court of Appeals' refusal to give weight to Gulf's unsworn allegations of misconduct…").

interest in pursuing a collective action, Defendants had every right to present evidence demonstrating the opposite.[28]

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety.

Respectfully submitted this 7th day of June, 2006.

*/s/ Amanda C. Kunz*
William A. Clineburg, Jr.
Georgia Bar No. 170550
Ryan Scott Ferber*
Georgia Bar No. 142082
Amanda C. Kunz*
Georgia Bar No. 142177
*(*Admitted Pro Hac Vice)*

KING & SPALDING LLP
1180 Peachtree Street N.E.
Atlanta, Georgia 30309-3521
(404) 572-4600 (telephone)
(404) 572-5135 (facsimile)
bclineburg@kslaw.com
sferber@kslaw.com
akunz@kslaw.com

Denise L. Wheeler
Florida Bar No. 0017809

FOWLER WHITE BOGGS BANKER
2201 Second Street 5th Floor
Ft. Myers, Florida 33901
(239) 334-7892 (telephone)
(239) 334-3240 (facsimile)
dwheeler@fowlerwhite.com

---

[28] See Rodgers v. CVS Pharmacy, Inc., No. 8:05-CV770T-27MSS, 2006 WL 752831, at *4 (M.D. Fla. Mar. 23, 2006) (Whittemore, J.) (denying conditional certification based on lack of interest where the defendant submitted thirty-one solicited affidavits from current employees indicating that they would not wish to join the suit).

ATTORNEYS FOR DEFENDANTS
HOMEBANC MORTGAGE
CORPORATION and PATRICK S. FLOOD

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION**

| | |
|---|---|
| **BRADFORD T. KING,**<br>**On behalf of himself and all others similarly situated,**<br><br>      **Plaintiff,**<br><br>**v.**<br><br>**HOMEBANC MORTGAGE CORPORATION, a foreign corporation, and PATRICK S. FLOOD,**<br><br>      **Defendants.** | **CIVIL ACTION NO.**<br>**2:06-CV-00096-VMC-SPC** |

## CERTIFICATE OF SERVICE

I hereby certify that on June 7th, 2006, I electronically filed **DEFENDANTS' AMENDED RESPONSE TO PLAINTIFF BRADFORD T. KING'S AMENDED AND SUPPLEMENTAL MOTION TO RESTRAIN, OR IN THE ALTERNATIVE LIMIT, DEFENDANTS' EX-PARTE COMMUNICATIONS WITH PUTATIVE CLASS MEMBERS THROUGHOUT TRIAL AND TO ISSUE CORRECTIVE NOTICE** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

> E. Nannette Piccolo
> Marshall A. Adams
> Marshall A. Adams, P.A.
> One East Broward Blvd., Suite 1410
> Ft. Lauderdale, Florida 33301

>  */s/ Amanda Kunz*
> Georgia Bar No. 142177